FILED

SEP 2 4 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 06-22225-D-7 |
| BETSEY WARREN LEBBOS, | |
| Debtor. | |
| LINDA SCHUETTE, | Adv. Pro. No. 07-2006-D |
| Plaintiff, | Docket Control No. JG-3 |
| v. | |
| BETSEY WARREN LEBBOS, et al., | |
| | DATE: September 12, 2007 |
| Defendants. | TIME: 10:00 a.m. |
| | DEPT: D |

This memorandum decision is not approved for publication and may
not be cited except when relevant under the doctrine of law of
the case or the rules of claim preclusion or issue preclusion.

<u>MEMORANDUM DECISION</u>

Jason Gold, Co-Trustee of the Aida Madeleine Lebbos No. 2
Trust, a defendant in this action ("Defendant"), seeks to
disqualify the undersigned as the bankruptcy judge in this
adversary proceeding.  For the reasons set forth below, the court
will deny the Defendant's request.

I. INTRODUCTION

On June 26, 2006, Betsey Warren Lebbos ("Debtor") filed a voluntary chapter 7 petition, thereby commencing the case in which this adversary proceeding is pending. On January 3, 2007, Linda Schuette, the chapter 7 trustee in the case ("Plaintiff") filed a complaint seeking to set aside alleged fraudulent transfers, to recover property and/or monetary damages, for turnover of property, and for declaratory relief, thereby commencing this adversary proceeding. The defendants in the adversary proceeding are the Debtor, individually and as a trustee of the Aida Madeleine Lebbos No. 2 Trust ("the Trust"), the Defendant, as a trustee of the Trust, and Thomas Carter, as a trustee of the Trust.[1]

On August 17, 2007, the Defendant filed a document entitled "Request for Disqualification of Honorable Robert Bardwil" ("Request"). The caption of the Request contained a hearing date of August 29, 2007, but the Defendant did not file a notice of hearing or an application for an order shortening time, as required by Local Bankruptcy Rule 9014-1.

Also on August 17, 2007, co-defendant Thomas Carter filed his own request, in the form of an "Affidavit for Disqualification of Honorable Robert Bardwil," and on August 24, 2007, the Debtor filed a document in the parent bankruptcy case entitled "Judicial

---

1. The Plaintiff also named Ms. Lebbos, Mr. Gold, and Mr. Carter as trustees of the Aida Madeleine Lebbos Trust II. The caption of the request that is the subject of this decision refers to that trust as "non-existent." The court makes no decision herein with regard to the correct name of the trust or as to whether there are one or more trusts at stake in this proceeding.

- 2 -

Disqualification Affidavit For Honorable Robert Bardwil Due to His Interest in the Outcome, Partisanship, Bias, Prejudice, And Prejudgment Against The Disabled." Finally, on September 6, 2007, the Debtor filed a document bearing the same title in this adversary proceeding.

On August 29, 2007, the court issued orders on the first three matters, the Debtor's affidavit in the parent case and Mr. Gold's request and Mr. Carter's affidavit in this adversary proceeding, construing the matters as motions, setting them for hearing on September 12, 2007, and setting a deadline of September 5, 2007, for the filing of responses. The Plaintiff, through her counsel, Michael Dacquisto, filed opposition in all three matters on August 30, 2007.

On September 12, 2007, the court heard oral argument. The following parties appeared and presented argument: Jason Gold on his own behalf, John Read (by telephone), making a special appearance for the Debtor, and Michael Dacquisto (by telephone), for the Plaintiff.

No objection was made to any evidence offered. The motion having been briefed and argued by those parties wishing to be heard, the court took the motion under submission.

## II. ANALYSIS

### A. Legal Standards for Disqualification

This court has jurisdiction over the motion pursuant to 28 U.S.C. sections 1334 and 157(b)(1). The motion is a core proceeding under 28 U.S.C. section (b)(2)(A) & (O); In re Betts, 143 B.R. 1016, 1018 (Bankr. N.D. Ill. 1992).

"A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises, or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a).

Section 455 of Title 28 provides in part as follows:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

> * * *

> (4) He knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

The disqualification statute was comprehensively revised in 1974, to provide for disqualification not only where a judge holds a personal bias or prejudice, but also to spell out a list (not fully reproduced above) of various interests and relationships that require the judge to disqualify himself from hearing a proceeding; such interests and relationships were only generally stated in the prior statutory language. Liteky v. United States, 510 U.S. 540, 546-48 (1994). Section 455(a) was added to include objective, "catch-all" grounds for disqualification, in addition to the earlier "interest or

- 4 -

relationship" grounds and "bias or prejudice" grounds, which are now specifically stated and set forth in the various subsections making up § 455(b).  <u>Liteky</u>, 510 U.S. at 548.  Under § 455(a), "[the standard for recusal is clearly objective: 'whether a reasonable person with knowledge of all of the facts would conclude that the judge's impartiality might reasonably be questioned'."  <u>In re Georgetown Park Apts., Ltd.</u>, 143 B.R. 557, 559 (B.A.P. 9th Cir. 1992), quoting <u>United States v. Nelson</u>, 718 F.2d 315, 321 (9th Cir. 1983) (other citations omitted).

The Code of Conduct for United States Judges (the "Code of Conduct") mirrors the provisions of 28 U.S.C. § 455.  The Code of Conduct requires that "every judicial officer must satisfy himself that he is actually unbiased towards the parties in each case and that his impartiality is not reasonably subject to question."  <u>In re Bernard</u>, 31 F.3d 842, 843 (9th Cir. 1994). Under this standard, the judge must not only be subjectively confident that he is unbiased; it is also objectively necessary that "an informed, rational, objective observer would not doubt his impartiality."  <u>Id</u>. at 844, citing <u>United States v. Winston</u>, 613 F.2d 221, 222 (9th Cir. 1980).  However, "to say that § 455(a) requires concern for appearances is not to say that it requires concern for mirages."  <u>United States v. El-Gabrowny</u>, 844 F. Supp. 955, 961 (S.D.N.Y. 1994).  As such, recusal must be based on factors in the record and in the law.  <u>Id</u>. at 962.

Cases applying recusal statutes apply a presumption of impartiality.  <u>E.g.</u> <u>In re Larson</u>, 43 F.3d 410, 414 (8th Cir. 1994) (judge presumed impartial; parties seeking recusal bear "substantial burden" of proving otherwise); <u>First Interstate Bank</u>

- 5 -

1  v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000)

2  ("Judicial impartiality is presumed"); In re Spirtos, 298 B.R.

3  425, 431 (Bankr. C.D. Cal. 2003) ("A judge is presumed to be

4  qualified to hear a matter and the burden is upon the moving

5  party to prove otherwise").

6        In addition, "[j]udges have an obligation to litigants and

7  their colleagues not to remove themselves needlessly . . .

8  because a change of umpire in mid-contest may require a great

9  deal of work to be redone . . . and facilitate judge-shopping."

10  In re Betts, 143 B.R. 1016, 1020 (Bankr. N.D. Ill. 1992), quoting

11  In re National Union Fire Ins. Co., 839 F.2d 1226, 1229 (7th Cir.

12  1988) (omitting citation); see also In re Computer Dynamics,

13  Inc., 253 B.R. 693, 698 (E.D. Va. 2000) (judge equally obligated

14  not to remove himself when there is no necessity and to do so

15  when there is), aff'd 10 F. App'x 141 (4th Cir. 2001).

16  B.   The Defendant's Arguments

17        1.   Contentions re Factual Allegations of the Complaint

18        The Defendant begins with two paragraphs outlining his

19  contentions regarding the factual allegations in the Plaintiff's

20  complaint, and concludes that the Plaintiff's attempt to take

21  property allegedly belonging to the Trust is "offensive and

22  fraudulent."  It is not necessary or appropriate that the court

23  consider these contentions in ruling on the Request, and the

24  court therefore will not address or consider them.

25        2.   Allegedly Prejudging the Issues

26        The Defendant states that "[o]n or about August 1, 2007 the

27  Honorable Robert Bardwil stated he would deny my motion to change

28  venue of this case even though no such motion has yet been

- 6 -

filed." The Defendant concludes that the court prejudges issues in the case, and that a reasonable observer would therefore doubt the court's ability to be fair and impartial. The Defendant states that "a transcript is on order." Request at ¶ 9.

The court has been unable to locate a transcript in the record where remarks were made that might be construed as suggested by the Defendant, and therefore, will not further address the specifics of this issue. However, the court is confident that it has not and will not prejudge issues in the adversary proceeding.

### 3. Allegations Previously Considered

In paragraphs 12 and 13 of the Request, the Defendant raises a number of arguments that have previously been raised by the Debtor in the parent bankruptcy case, and concludes therefrom that the court has "a deep-seated hostility and antagonism" toward the Debtor, that the court will not read pleadings from the Debtor or the defendants, "and will automatically rule against [the Defendant], as a co-defendant with her, on all issues."[2]

The particular arguments raised in these paragraphs have been previously considered by the court and addressed in the court's Memorandum Decision filed April 13, 2007 (DN 250 in the parent case).[3] The court's responses will not be repeated here.

/ / /

---

2. The Defendant acknowledged at the hearing on this matter that the Debtor prepared the Request and the Defendant reviewed it.

3. The abbreviation "DN" refers to the docket number of the particular entry on the court's docket.

- 7 -

4.  Entry of Defaults

On February 7, 2007, the Plaintiff filed requests for entry of the defaults of the Defendant and his co-defendants, Thomas Carter and the Debtor.[4]  On February 13, 2007, the court issued an Entry of Default and Order Re:  Default Judgment Procedures in response to the Plaintiff's requests.[5]  The defaults were entered by the clerk of the court, as provided by Federal Rule of Civil Procedure 55(a), incorporated in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7055.  The requests for default were not presented to or considered by the undersigned.

The Defendant construes the issuance of these defaults as follows:

> In the face of my not being served with the summons and the complaint, and the Court appearing to have actual knowledge that the plaintiff's lawyer, Michael Dacquisto, lied and committed perjury to this Court in claiming that he served me, the Honorable Robert Bardwil did permit this fraud and perjury to continue and let a fraudulent default against me be entered, knowing that I had never been served.[6]

The best that can be said of this interpretation is that it is untrue.

The Defendant continues as follows:

> His [the undersigned's] comments indicate he had actual knowledge that the default was a fraud.  He took no action relative to the fraud of the plaintiff.  I believe this is evidence of his bias which renders his fair judgment impossible.  Second, the record reflects the plaintiff and her lawyer misled my lawyer by

---

4.  With regard to the Defendant, DNs 16 and 19.

5.  With regard to the Defendant, DNs 24 and 25.

6.  Request at 5:1-6.

1             entering a default when he pointed out that they had
              not served me and he offered his cooperation.[7]
2

3       The Defendant then states that the undersigned has condoned

4   "the commission of crimes of deceit and perjury by the plaintiff

5   and her lawyer," which "crimes" he contends "are plain on the

6   face of the pleadings."  Request at 5:11-15.

7       The Defendant has failed to quote or otherwise identify the

8   comments in question, and the court is aware of none.  He has

9   failed to identify any pleadings that evidence the commission of

10  a crime by the Plaintiff or her Counsel, on their face or

11  otherwise, and the court is aware of none.   That the court "took

12  no action" in response to the entry of the defaults was in

13  accordance with applicable procedural rules, which provide for

14  the court to take action with respect to entry of a default only

15  when the matter is brought to the court's attention by a party in

16  interest, either by way of a motion for a default judgment or a

17  motion to set aside the default.[8]

18      5.  Setting Aside of Defaults

19      The Defendant next quotes the undersigned at a hearing on

20  March 14, 2007 on the motion of the Debtor, as a defendant in

21  this adversary proceeding, to set aside the default described

22  above, as to the Debtor.[9] [10]   The court incorrectly referred to

23  _____

24      7.  Request at 5:6-10.

25      8.  See Federal Rule of Civil Procedure 55(d)(2) and (c),
    incorporated in bankruptcy adversary proceedings by Federal Rule of
26  Bankruptcy Procedure 7055.

27      9.  The Debtor's motion is DN 27 in this adversary proceeding.
    The motion of the Defendant and Thomas Carter is DN 34.

28      10.  The transcript is DN 223 in the parent bankruptcy case.

the Debtor as being incarcerated, from which the Defendant
concludes that the court has a "deep-seated antagonism and
hostility" and an "intense hatred" for the Debtor.[11]  On the
contrary, the court's reference was intended to suggest that she
may have had difficulty in timely responding to the complaint;
thus, the remark was entirely innocuous.  The court notes that it
did in fact set aside the defaults of the Debtor and her co-
defendants, including the Defendant.

The Defendant next focuses on the court's observation at the
hearing that there was "a likelihood that any appellate court
will certainly give the defendants the opportunity to defend
themselves."  The Defendant takes this remark to mean that the
only reason the court set aside the defaults was that it feared
being reversed on appeal.[12]

On the contrary, recognition on the part of a trial judge
that an appellate court is likely to reverse a particular ruling
is nothing more than a recognition of the state of the law.

The Defendant then asserts that the undersigned has
"transferred his hatred for the debtor" to the Defendant and his
co-defendant.  "He is stating an identity of party as if we were
all the same party whom he hates and despises."[13]  The court finds
this assertion to be inexplicable.  Certainly, there is nothing
in the record to support such a conclusion, either as to the
Debtor or as to her co-defendants.  In fact, the court has gone

---

11.  Request at ¶ 17.

12.  Request at ¶ 18.

13.  Request at ¶ 20.

- 10 -

to great lengths to try to reconcile the Debtor's asserted physical disabilities with her duties to appear and cooperate in her bankruptcy case.[14]

### 6.    Allegedly Encouraging Harassment of the Defendant

The Defendant next accuses the Plaintiff's counsel of communicating with him directly when he was represented by counsel.  The Defendant cites "Exhibit A," consisting of copies of envelopes from the Plaintiff's counsel, addressed to the Defendant and postmarked on February 28, March 12, and March 14, 2007.[15]  (From proofs of service filed with the court, it appears the Plaintiff's attorney served the Defendant and his then attorney Raymond Aver with papers opposing various motions.)

The Defendant says he "understand[s] that the Honorable Robert Bardwil supports this," and thus, "provides the trustee and her lawyer preferential treatment," and encourages them "to harass defendants directly."  There is simply no basis in reality for this contention.

### 7.    Allegedly Cutting Off the Debtor

The Defendant next complains of a remembered incident in which the undersigned allegedly "yell[ed] at Ms. Lebbos" and said he would cut her off "so that she can not speak."[16]  With no transcript furnished by the Defendant, the court assumes this is

---

14.  See Memorandum Decision on Debtor's "Judicial Disqualification Affidavit For Honorable Robert Bardwil Due to His Interest in the Outcome, Partisanship, Bias, Prejudice, And Prejudgment Against The Disabled," filed herewith in the parent case.

15.  Request at ¶ 21.

16.  Request at ¶ 22.

1  the instance also addressed by the Debtor in her second attempt

2  to disqualify the undersigned.

3      The transcript reveals that the Debtor repeatedly

4  interrupted the proceedings, objected to "allowing the

5  interference of my criminal process by an attorney who is lying

6  and defrauding everybody," made references to criminal and

7  unethical conduct, and brought up her attempt to have the

8  Trustee's Counsel disbarred, all in an effort to persuade the

9  court that she, and not the Trustee's Counsel, should be the one

10  to ask her probation officers whether she could attend the

11  meeting of creditors in San Jose.[17]  The court's caution to the

12  Debtor was a reasonable and prudent attempt to control the

13  courtroom proceedings, fully justified in the circumstances.

14      Finally, the court will briefly address the Defendant's

15  remarks at the hearing on this matter.  The Defendant's arguments

16  at the hearing demonstrated dissatisfaction with the court's

17  denial of the Debtor's motion to transfer the proceeding to the

18  Central District of California.  The Defendant referred to the

19  venue motion, and stated that "the property is down here" [in the

20  Los Angeles area], "the trustees are down here," he is in law

21  school, and the Debtor is extremely ill.  The Defendant stated he

22  does not know why the court wants "to keep the case there [in

23  Sacramento]."

24      The cases are uniform that a "judge's adverse rulings in the

25  course of a judicial proceeding almost never constitute a valid

26  basis for disqualification based on bias or partiality."  12 JAMES

27  ───────────────

28      17.  Transcript of April 25, 2007 hearing, DN 327 in the parent
case, pages 21-29.

- 12 -

1  Wm. Moore, et al., Moore's Fed. Practice § 63.21[4] (3d ed. 2006)

2  (citing cases); see also Liteky, 510 U.S. at 554-55.

3       The Defendant next addressed the merits of the case,

4  asserting that the property is trust property and always has

5  been.  He added that the court has said it is going to take trust

6  property without giving the trust an opportunity to be heard.

7  The contention is without support.  In fact, the court set aside

8  the default of the three co-trustees, Ms. Lebbos, Mr. Gold, and

9  Mr. Carter, and has allowed them repeated extensions of the

10 deadline to file an answer or other responsive pleading.  The

11 Defendant, through counsel, filed a motion to set aside his

12 default on February 20, 2007.  Yet it was almost six months

13 later, on August 17, 2007, that the Defendant filed his first

14 responsive pleading, a motion to dismiss.  (At a hearing on

15 August 1, 2007, the court had granted the most recent extension

16 of time, to August 17.  DN 187.)  The facts do not support the

17 conclusion that the court has been anything less than completely

18 fair to the Defendant.

19                          III.  CONCLUSION

20      For the reasons stated above, the court finds that the

21 Defendant has not met his burden under 28 U.S.C. § 455(a) of

22 overcoming the presumption of impartiality and demonstrating that

23 the impartiality of the undersigned might reasonably be

24 questioned.  Neither has the Defendant demonstrated grounds for

25 disqualification under 28 U.S.C. § 455(b).

26 / / /

27 / / /

28 / / /

1          The court will issue an order consistent with this

2    memorandum.

3    Dated: September 24, 2007

_ROBERT S. BARDWIL_
ROBERT S. BARDWIL
United States Bankruptcy Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a true copy of the attached document was mailed today to the following entities listed at the address(es) shown below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 41306
Long Beach, CA 90853-1306

Thomas Carter
P.O. Box 41175
Long Beach, CA 90853

Jason Gold
17091 Elm Street, Suite 3
Huntington Beach, CA 92646

DATE: September 24, 2007

_____
Deputy Clerk