

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

FILED

FEB 1 3 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 06-22225-D-7 |
| BETSEY WARREN LEBBOS, | |
| Debtor. | |
| LINDA SCHUETTE, | |
| Plaintiff, | Adv. Pro. No. 07-2006-D |
| v. | Docket Control No. MPD-1 |
| BETSEY WARREN LEBBOS, et al., | DATE:  January 16, 2008 |
| | TIME:  10:00 a.m. |
| | DEPT:  D |
| Defendants. | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or Issue preclusion.**

### MEMORANDUM DECISION

Plaintiff Linda Schuette, the chapter 7 trustee in this case ("the Trustee") seeks an order striking the answer filed by defendant Betsey Warren Lebbos ("the Debtor") to the Trustee's complaint in this adversary proceeding and entering the default of the Debtor.  For the reasons set forth below, the court will grant the Trustee's motion.

/ / /

/ / /

# I. INTRODUCTION

On January 3, 2007, the Trustee filed a complaint seeking to set aside alleged fraudulent transfers, to recover property and/or monetary damages, for turnover of property, and for declaratory relief, thereby commencing this adversary proceeding. The defendants are the Debtor, individually and as a trustee of the Aida Madeleine Lebbos No. 2 Trust, and Jason Gold and Thomas Carter, as co-trustees of the Aida Madeleine Lebbos No. 2 Trust. Aida Madeleine Lebbos is the Debtor's daughter.

On October 10, 2007, the Trustee served on the Debtor, Gold, and Carter, three notices of deposition, with requests for production of documents. The documents were to be produced and the depositions to be conducted on November 14, 2007, at 10:00 a.m. (Carter), November 14, 2007, at 2:00 p.m. (Gold), and November 15, 2007, at 10:00 a.m. (the Debtor), at a video conferencing center in Long Beach, California, where the Debtor resides.

On November 6, 2007, the Debtor faxed a letter to the Trustee's counsel, Michael Dacquisto ("Trustee's Counsel"), stating that she "[could] not physically or legally attend" the deposition.[1] [2]

---

1.    Trustee's exhibits in support of this motion, filed November 28, 2007, DN 295 in Adv. No. 07-2006, Exhibit B.    (All references to "DN" are to the number of entry of the document on the court's docket.    Unless there is a specific reference to an adversary proceeding, the reference will be to the docket in the parent bankruptcy case.)

2.    As this motion arises out of a discovery dispute, it is relevant that the Debtor is familiar with legal processes, having practiced law from 1975, the date of her admission to the Bar of the State of California, until 1991, when she was disbarred. Lebbos v. State Bar of California, 53 Cal.3d 37, 49 (1991).

- 2 -

The Trustee's Counsel responded the same day by letter,[3] advising the Debtor that he would not cancel or continue the deposition, and that if she failed to appear or to produce documents, he would "ask the court for further relief, including a terminating sanction such as striking your answer and entering your default."[4]

The Trustee's Counsel appeared at the time and place set for the deposition; the Debtor did not. On November 28, 2007, the Trustee filed a motion for a discovery sanction against the Debtor, in the form of an order striking her answer in this adversary proceeding and entering her default ("the Motion"). The Motion was brought on 14 days' notice, as permitted by the court's Amended Scheduling Order dated October 31, 2007.[5]

At the initial hearing on the Motion, on December 12, 2007, the court fixed a briefing schedule. On January 4, 2008, the Debtor filed opposition to the Motion, and on January 9, 2008, the Trustee filed a reply.

On January 16, 2008, the court heard oral argument. The following parties appeared: Michael Dacquisto (by telephone), for the Trustee; John Read (by telephone), making a special

/ / /

/ / /

---

3.   The Trustee's Counsel is limited to communicating with the Debtor by mail, as she has refused to provide him with a telephone number, fax number, or e-mail address.

4.   Trustee's exhibits, DN 295 in Adv. No. 07-2006, Exhibit C.

5.   The Trustee filed similar motions with respect to the failure of Jason Gold and Thomas Carter to attend their depositions and to produce documents. The court will issue separate memorandum decisions on those motions.

1  appearance for the Debtor;[6] Jeralyn Kay Spradlin (by telephone),

2  for creditor George Alonso; and defendant Jason Gold (by

3  telephone), on his own behalf.

4      The Motion having been briefed and argued by those parties

5  wishing to be heard, the court took the Motion under submission.

6                        II. ANALYSIS

7      This court has jurisdiction over the motion pursuant to 28

8  U.S.C. sections 1334 and 157(b)(1).  The Motion is a core

9  proceeding under 28 U.S.C. section (b)(2)(A), (E) & (H).

10 A. The Meet and Confer Requirement

11     The Trustee stated in the Motion that she had not sought to

12 meet and confer with the Debtor prior to filing the Motion,

13 because nothing would be accomplished.  The Debtor extends that

14 apparent omission into "twelve flagrant and intentional

15 violations" of the amended scheduling order in this case.[7]  As a

16 result, the Debtor seeks dismissal of the action and $80,000 in

17 sanctions, of which $50,000 would be payable to the court to

18 reimburse taxpayers for the court's time, and $10,000 to each

19 defendant.

20 / / /

21 _____

22     6.  Since January 3, 2007, when the court granted her former
   attorney's motion to withdraw as her counsel, the Debtor has
23 represented herself pro se, in both the parent case and this
   adversary proceeding.  John Read has made numerous special
24 appearances on the Debtor's behalf, in both matters, but he has
   never substituted in as her attorney of record.  See discussion
25 below.

26     7.  The Debtor has a habit of multiplying so that her
   opponents' alleged transgressions seem larger.  In this case, the
27 Trustee filed motions against each of the three defendants for
   failure to appear at their depositions, and a single motion for
28 failure to permit inspection of property.  Four motions, three
   defendants, twelve violations.

                          - 4 -

1    The Debtor misconstrues the scheduling order, which
2  provides:  "The parties involved in all [discovery] motions shall
3  certify that they have met and conferred regarding the dispute
4  and have made a reasonable effort to reach agreement on disputed
5  matters."  The requirement applies to the parties involved in the
6  dispute, not just to the moving party.  In this case, the
7  Trustee's Counsel responded immediately when the Debtor wrote to
8  him that she would not appear.  The parties' letters adequately
9  set forth their respective positions concerning the deposition.
10  Under the unique circumstances of this case, the court construes
11  the letters as an adequate "meet and confer," and the Trustee's
12  submission of the letters as exhibits to be her certification.[8]

13    The Debtor has refused to give the Trustee's Counsel her
14  telephone number, fax number, or e-mail address, thus limiting
15  him to "snail" mail.  And she delayed until November 6 before
16  responding to a notice of deposition served on October 10, for a
17  deposition set for November 15.  These circumstances combined to
18  render any meaningful meet and confer nearly impossible.
19  Nevertheless, the Trustee's Counsel responded to the Debtor's
20  November 6 letter the same day, thus putting the ball back in the
21  Debtor's court.  Nothing prevented the Debtor from continuing the
22  dialogue, yet by the time the Trustee filed the Motion, on
23  November 28, the Debtor had not responded.

_____

24
25    8.  The Debtor herself has previously recognized an exchange
   of letters as a "meet and confer."  On February 27, 2007, she wrote
   to the Trustee's Counsel:  "Because of the pendency of the appeal
26  concerning your termination and that of your client and your
   disbarment, it is better for us to communicate in writing and this
27  will comprise our 'meet and confer.'".  Exhibit B to Debtor's
   opposition to motion for Rule 2005 order, filed March 21, 2007, DN
28  209.

1    Further, the Trustee's Counsel remedied any possible

2    inadequacy in the meet and confer on December 12, 2007, when he

3    wrote to the Debtor, Gold, and Carter.[9]  He provided the details

4    of his telephone conversations with Gold and Carter, and made a

5    seven-part proposal for resolution of the issues surrounding the

6    timing and procedure for the depositions, document production,

7    and property inspection.  He requested that each party indicate

8    his or her consent to the proposal or to parts of it, and specify

9    "a concrete counter proposal" for each part of the proposal to

10   which he or she did not consent.

11   Gold and Carter did not reply.  As further discussed below,

12   the Debtor's reply, dated December 20, 2007,[10] convinces the court

13   that the Trustee was right:  any further attempt to meet and

14   confer would accomplish nothing.

15   <u>B. Legal Standards for Terminating Sanctions</u>

16   The Motion is brought pursuant to Fed. R. Civ. P. 37(d),[11]

17   incorporated in bankruptcy adversary proceedings by Fed. R.

18   Bankr. P. 7037.

19   / / /

20   / / /

21

22       9.   Trustee's exhibits filed January 9, 2008, Exhibit A.

23       10.  <u>Id.</u>, Exhibit B.

24       11.  Unless otherwise indicated, Rule references are to the
     Federal Rules of Civil Procedure, as enacted and promulgated prior
25   to December 1, 2007.  Effective that date, the Rules were amended
     "to make them more easily understood and to make style and
26   terminology consistent throughout the rules."  The changes were
     "intended to be stylistic only."  Notes of Advisory Committee on
27   2007 Amendments.  Because this case was commenced prior to the
     effective date of the amendments, December 1, 2007, the earlier
28   language will be used.

- 6 -

Rule 37(d) provides:

> If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or . . . (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. . . . In lieu of any order or in addition thereto, the court shall require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

In the circumstances listed above, Rule 37(b)(2)(C), in turn, permits the court to enter "[a]n order striking out pleadings or parts thereof, . . . or rendering a judgment by default against the disobedient party. . . ."  Such a sanction is commonly referred to as a terminating sanction, because it terminates the party's right to a trial on the merits.

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).  As a result, the violation giving rise to the sanction "must be due to the 'willfulness, bad faith, or fault' of the party." Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003), citing Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994), Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir. 1985).

- 7 -

"Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault."  Jorgensen, 320 F.3d at 912, quoting Hyde & Drath, 24 F.3d at 1166.

The Ninth Circuit has created a five-part test, with three subparts to the fifth part, for determining whether a terminating sanction is just:

> "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." [Citation] The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. [Citation] This "test" is not mechanical.  It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow . . . .

Conn. Gen. Life Ins. Co., 482 F.3d at 1096, quoting Jorgensen, 320 F.3d at 912, and citing Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

"[T]he most critical factor is not merely delay or docket management concerns, but truth."  Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

> What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations "threaten to interfere with the rightful decision of the case."

Valley Eng'rs., 158 F.3d at 1057, quoting Adriana Intl. Corp. v. Lewis & Co., 913 F.2d 1406, 1412 (9th Cir. 1990).

/ / /

/ / /

- 8 -

> Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves.   That can operate to the advantage of a dishonest, noncompliant party, and can prevent the truth from coming out.

Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

Thus, where a "pattern of deception and discovery abuse" has made it impossible for the court to conduct a trial "with any reasonable assurance that the truth would be available," terminating sanctions are appropriate.   "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."   Conn. Gen. Life Ins. Co., 482 F.3d at 1097, quoting Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 352 (9th Cir. 1995).

C. The Debtor's Prior Behavior

The Debtor characterizes her letter to the Trustee's Counsel as "a timely request for a continuance of the first discovery request made in a case."[12]   Technically, she is correct, if one views this adversary proceeding as completely distinct from the Debtor's parent bankruptcy case.   The court finds, however, that the two cases are so intertwined that consideration of the one properly informs the court's decision on the other.

First, the parties are the same--Trustee/Plaintiff, Debtor/Defendant.   Second, the nature of the conduct in question is the same--the production of documents and the giving of

---

12. Opposition to Motion, filed January 4, 2008, DN 375 in Adv. No. 07-2006, at 29:15-16.   "In this case, there is no prior order, no prior discovery request, no last minute cancellations, and no such delay as this was the first discovery sought."   Id., 18:17-29.

testimony under oath--at a meeting of creditors in the parent case, at a deposition in the adversary proceeding.[13]  Third, the Trustee's present request for documents includes documents she originally sought from the Debtor in the parent case more than one and one-half years ago, but which the Debtor has still failed to produce.  In fact, if the Debtor is correct that the Trustee's complaint in the adversary proceeding is without merit, and if the Debtor had produced documents to support that conclusion and testified satisfactorily at the meeting of creditors, this adversary proceeding might have been unnecessary.

Perhaps most important, the court will not reward the Debtor's failure to comply with the most fundamental duties of a bankruptcy debtor in a parent case by ignoring what that conduct foretells for the adversary proceeding.  Thus, the court finds that the Debtor's prior behavior in both the parent bankruptcy case and this adversary proceeding provides necessary background on the Trustee's Counsel's decision to proceed with the deposition, and bears directly on the resolution of the Motion.

In short, the Motion is not considered in a vacuum.  The court is sufficiently satisfied that the Debtor's long history of gamesmanship, chicanery, and bad faith has been employed to frustrate the administration of this case and to wear down and exhaust her adversaries.  The court's recitation of the background of this case may seem lengthy and detailed, but it is necessary to underscore why severe sanctions are appropriate.

---

13.  In determining discovery sanctions, the court properly considers all incidents of the party's prior misconduct related to discovery.  <u>Adriana</u>, 913 F.2d at 1411-12.

1 | <u>1. The Debtor's Prior Behavior in the Parent Case</u>

2 | From the time she commenced her bankruptcy case, in June of

3 | 2006, the Debtor has steadfastly sought to frustrate the

4 | Trustee's efforts to examine her, first at the meeting of

5 | creditors, then at a Rule 2004 examination, and now at a

6 | deposition, and to avoid producing the documents the Trustee

7 | first requested over one and one-half years ago.  The Debtor has

8 | repeatedly denied that she has a duty to appear at a continued

9 | meeting of creditors or to produce the documents demanded by the

10 | Trustee, she has relied on hyper-technicalities and gross

11 | mischaracterizations, and she has diverted attention from her own

12 | duties as a debtor by a relentless campaign of attacks on the

13 | Trustee, the Trustee's Counsel, and any other party who opposes

14 | her.

15 | The Debtor began by opposing the Trustee's motion to employ

16 | counsel and requesting a nine-month stay of all proceedings in

17 | the case on the ground that she was soon to be incarcerated or

18 | placed under house arrest in Santa Clara County.

19 | > I need a continuance of nine months to fulfill a court
20 | > ordered incarceration and then to obtain another attorney
   | > to represent me and in the meantime, the trustee's hiring
21 | > of a lawyer has to be voided and denied due to its
   | > unconstitutionality and the failure of the trustee to
   | > comply with the legal requirements and due process of law
22 | > required for such an appointment.[14]

23 | The Debtor accused the Trustee and Trustee's Counsel of

24 | "relying on false and/or fraudulent claims" of the Debtor's

25 | opposing counsel in a state court action, and of "taking sides"

26 |

27 | _____

28 | 14.  Debtor's declaration filed August 29, 2006, DN 23, ¶ 2.

- 11 -

against the Debtor in that litigation.[15]  Referring to the initial
session of the meeting of creditors, the Debtor accused the
Trustee of "ask[ing] bizarre questions, clearly indicating that
she was being fed misinformation from the alcoholic lawyer
plaintiff in the civil litigation."[16]

Following a hearing at which the Debtor's then attorney,
Darryll Alvey, appeared, the court approved the Trustee's motion
to employ counsel.

Next, the Debtor unilaterally excused herself from attending
the continued meeting of creditors, claiming later that "there is
no legal requirement for a debtor to appear at more than one
creditor's meeting,"[17] that "the law requires that the debtor
attend as ordered by the Court, not as requested by a trustee,"[18]
that she was not required to appear because she "was never asked
to appear,"[19] and that she "assumed her attorney would handle
it."[20]

The Debtor was mistaken across the board.  The Bankruptcy
Code requires that debtors in bankruptcy cases "appear and submit
to examination under oath at the meeting of creditors" (11 U.S.C.
§ 343), which "may be adjourned from time to time by announcement

---

15.  Id., ¶ 6.

16.  Id., ¶ 8.

17.  Debtor's declaration attached to notice of hearing filed
January 31, 2007, DN 137, ¶ 8.

18.  Id.

19.  Points and authorities attached to notice of hearing
filed January 31, 2007, DN 137, pp. 13, 18, 28-29, 29 n. 6.

20.  Id.

1   at the meeting of the adjourned date and time without further

2   written notice."  Fed. R. Bankr. P. 2003(e).  Neither the Code

3   nor applicable rules limit the number of sessions a debtor may be

4   required to attend, although such a limitation may be imposed by

5   way of a protective order.  The Debtor never sought such an

6   order.

7        The Debtor acknowledged that the Trustee announced the date

8   and time of the continuance at the initial meeting, which the

9   Debtor did attend.[21]  The Debtor did not take the opportunity at

10  that time to ask whether she was required to attend, she did not

11  later contact the Trustee or her counsel, and she did not contact

12  her attorney to verify her assumption that he would be handling

13  the matter for her.

14       When the Debtor failed to attend the continued meeting of

15  creditors, the Trustee filed a motion to require her to attend

16  and to produce the documents the Trustee had requested over three

17  months earlier.  Four days later, on October 30, 2006, the Debtor

18  wrote an ex parte letter addressed to the judges of this court,

19  which she characterized as an "official attorney disciplinary

20  complaint" against the Trustee and Trustee's Counsel.[22]  She

21  accused them of acts of moral turpitude, dishonesty, fraud, and

22  corruption, and sought their disbarment from the practice of law

23  in this court.[23]

24

25       21.  Id. at 13.

26       22.  The letter was filed with the court on November 1, 2006;
27  it will be referred to herein as "the November 1, 2006 letter."

28       23.  The Debtor was under the mistaken impression that the
    Trustee is an attorney.

- 13 -

For purposes of the Motion, the November 1, 2006 letter is notable for the Debtor's pattern of twisting the words of the Trustee and Trustee's Counsel so as to deflect attention from her own failure to comply with her duties as a debtor in a bankruptcy case.  For example, the Debtor characterized the Trustee's Counsel's entirely appropriate letters to the Debtor's probation officer[24] as "threats . . . of having the debtor imprisoned for a probation violation," because the Trustee's Counsel used the term "court hearing" instead of "creditors' meeting," and because he stated that the Debtor was legally required to attend.[25] Of course, the Debtor <u>was</u> legally required to attend; the characterization of the meeting as a court hearing was inconsequential.

The court construed the November 1, 2006 letter as a motion to terminate the appointment of the Trustee and the employment of the Trustee's Counsel, and allowed the Debtor to supplement the record, and the Trustee, Trustee's Counsel, and the United States Trustee to file opposition.  The Debtor took the opportunity to expand her accusations to include "a pervasive course of perjury perpetrated by Ms. Schuette" that "warrants her being criminally charged with two counts of the crime of perjury and removed from her position as trustee in this court and sent to federal

---

24.  Copies of the letters appear among exhibits filed by the Trustee on October 26, 2006, DN 38, Exhibits D and E.

25.  The Trustee's Counsel's statement to the probation officer, "Will you please advise Ms. Lebbos of this court hearing and advise her she is required to appear?" is characterized as a "threat of my imprisonment for a probation violation used as a means to coerce, intimidate, and threaten me into compliance with their [the Trustee's and her counsel's] personal demands." November 1, 2006 letter, DN 44, at 6.

prison."[26]

The specifics of this particular allegation reveal how the Debtor parses the Trustee's words in order to arrive at her wildly unreasonable accusations, all in an effort to deflect attention from her own lack of cooperation. The Trustee had stated under oath that "[b]y letter dated July 5, 2006, the debtor, through her attorney, was asked to produce certain documents at or before her first meeting [of creditors]," and that the Trustee "could not complete the examination [at the meeting] because the documents requested had not been produced." According to the Debtor, those statements constituted perjury, because the Trustee's letter had actually requested production of the documents "by July 12, 2006," not at the meeting itself, on July 19, 2006.

> This is not a minor lie. These are major frauds and
> lies on the Court by Ms. Schuette. Judicial notice of
> the court record indicates Ms. Schuette made no request
> for the debtor to bring any documents to the meeting of
> creditors on July 19, 2006. None.

Debtor's declaration filed November 27, 2006, DN 55, ¶ 10-12.

It is noteworthy for purposes of this decision that the documents the Trustee asked the Debtor to produce by July 12, 2006 are among the documents the Trustee sought in her October 10, 2007 deposition notice. Now, over one and one-half years later, the Debtor has still not produced the documents, with the exception of some 40 pages the Debtor produced in August 2006.[27]

---

26. Declaration filed November 27, 2006, DN 55, ¶ 12.

27. Exhibit 5 among exhibits filed by the Debtor, DN 56.

It is also significant that as early as October 9, 2006, in a letter to the Debtor's probation officer, the Trustee's Counsel had suggested the possibility of conducting the meeting at the U.S. Trustee's office in San Jose if the Debtor was not able to travel to Redding.[28]  The Debtor referred to this letter in a blistering attack on the Trustee and Trustee's Counsel.[29] The argument centered on the Debtor's physical disabilities and consequent inability to travel to Redding, yet although she actually quoted from the letter, she omitted that portion suggesting that the meeting could take place in San Jose.[30]  In other words, the Debtor ignored the Trustee's Counsel's offer to travel from Redding to San Jose to accommodate her.

By December 27, 2006, the U. S. Trustee had weighed in with opposition to the Debtor's request for the removal of the Trustee and Trustee's Counsel.  As a result, in a reply filed that day (DN

---

28.  Exhibits filed by the Trustee on October 26, 2006, DN 38, Exhibit D.

29.  The Debtor took the position that the communication with her probation officers constituted an indirect communication with her without her then attorney's consent.  Thus, she cited the letter as support for her conclusion that the Trustee and his Counsel had "desecrat[ed] the attorney-client relationship," and "are an abhorrence to the legal profession."  Debtor's declaration filed November 27, 2006, DN 55, at ¶ 44.  The argument did not hold up, either in this court or on appeal.

30.  The Debtor quoted this portion of the October 9, 2006 letter, stopping short of the words "in San Jose":

> Would it be possible for you to allow her to travel to Redding to attend the 10/18/06 hearing?  My client and I would greatly appreciate this accommodation by you, if possible.  If that is not possible, would there be any problem with having her attend this examination at the office of the United States Trustee . . . ?

The Debtor submitted 90 pages of exhibits in support of her position (DN 56); the October 9, 2006 letter was not among them.

- 16 -

104), the Debtor announced her intention to seek disbarment proceedings against the attorney for the U.S. Trustee, Judith Hotze.  The Debtor also added subornation of perjury to her charges against the Trustee's Counsel, and adopted a pattern of stating as fact that her various opponents have admitted the charges she has made against them.[31]  These statements continue to this day, and are invariably untrue, highly misleading, and done to frustrate and intimidate her opponents.

On January 22, 2007, having reviewed the parties' briefs and heard oral argument, the court issued a memorandum decision and order denying the Debtor's motion to terminate the services of the Trustee and Trustee's Counsel.  In response, the Debtor filed a motion to transfer the bankruptcy case to the Central District of California (DN 131), an ex parte application for a stay of the bankruptcy proceedings (DN 132), a motion for reconsideration of the order (DN 137), a motion for leave to appeal the order (DN 142), and a notice of appeal from the order (DN 153).

Meanwhile, at a January 3, 2007 hearing at which both the Debtor and her then attorney, Darryll Alvey, appeared by telephone, the court took under submission the Trustee's motion to compel the Debtor's attendance at the continued meeting of creditors and to compel the production of documents.[32]  On January 19, 2007, the court ordered the Debtor to appear at a

31.  E.g., Debtor's reply, DN 104, at ¶ 10:  "With Ms. Schuette's admission of her commission of the three crimes of perjury, she must be removed for incompetence and breach of her fiduciary duties."

32.  The court had conducted an earlier preliminary hearing (DN 49), and had given the Debtor the opportunity to file written opposition (DN 50).  The Debtor did not file opposition.

continued meeting of creditors on February 21, 2007, and to produce the requested documents at that time ("the January 19, 2007 Order") (DN 122).  The Debtor did not file a motion for a protective order, to amend the order, or for any other form of relief from the order.  She did not appeal the order.  She did not appear at the continued meeting of creditors on February 21, 2007, and did not produce the documents required by the court's order.

Instead, in response to the January 19, 2007 Order, the Debtor filed a document entitled "Debtor's Medical Report Indicating Impossibility of Performance" (DN 154), in which she contended that her physical disabilities prevented her from complying.  She also accused the undersigned of "trying to harm [her] and [her] family in order to play politics with the corrupt locals," and of "encourag[ing] fraud and corruption in the trustee and her lawyer."

On February 28, 2007, the Debtor filed an "ex parte affidavit" requesting that the undersigned be disqualified as the judge in her bankruptcy case, accusing him of pervasive bias and prejudice, misogynism, and sexism (DN 180).

On March 14, 2007, the Trustee filed a motion to bring the Debtor before the court pursuant to Fed. R. Bankr. P. 2005 (DN 195), citing the Debtor's failure to appear on February 21, 2007, and her failure to produce the documents.  The court declined to issue such an order, out of consideration for the Debtor's alleged health issues and travel limitations.  Instead, on May 10, 2007, as a specific accommodation to the Debtor, the court ordered the Debtor to appear for an examination under Fed. R. Bankr. P. 2004 on May 31, 2007, in San Jose, where the Debtor had been residing,

and again, to produce the documents ("the May 10, 2007 Order").[33]

Issuance of the May 10, 2007 Order followed a hearing on April 25, 2007, at which the Debtor appeared by telephone, and at which the parties discussed possible dates for the examination, including May 31, 2007. The Debtor did not mention at that hearing that she would be back in Long Beach by May 31. Attorney Read later stated that the Debtor "forgot to tell the court due to nervousness that she would be in Long Beach and would not be able to attend."[34] The court finds no need at this time to assess the truth of that statement, but notes that, in any event, there has been no explanation why the Debtor, again, failed to produce documents.

Thus, by June 6, 2007, the Debtor had failed to appear at the continued meeting of creditors in Redding, pursuant to the January 19, 2007 Order, she had failed to appear in San Jose, pursuant to the May 10, 2007 Order, and she had failed to produce documents, as required by both orders (and by the Bankruptcy Code in the first instance).[35] At a June 6, 2007 continued hearing on the Trustee's motion for a Rule 2005 order, the court advised Read

33. This order required the Trustee and Trustee's Counsel to travel approximately 245 miles to examine the Debtor, rather than the Debtor to travel to the Trustee's location, a most unusual circumstance in a bankruptcy case.

34. Transcript of October 31, 2007 hearing, Trustee's exhibits filed November 28, 2007, DN 295 in Adv. No. 07-2006, Exhibit D, p. 21 of 36.

35. A debtor has a duty to "cooperate with the trustee as necessary" to enable him or her to perform his or her duties as trustee (11 U.S.C. § 521(a)(3)), and to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4).

1  to caution the Debtor that she would need to make herself
2  available for examination.  "And whether it is done by telephone,
3  whether it is done down in Southern California, the Court will be
4  reasonable in that regard.  But simply not showing up is not
5  acceptable."[36]

6      The court continued the hearing to July 11 for the express
7  purpose of allowing the parties to try to reach mutually
8  acceptable arrangements.  Despite the court's admonition, neither
9  the Debtor nor Read contacted the Trustee's Counsel between June 6
10 and July 11, except that Read finally telephoned him the morning
11 of July 11.  At Read's request at the July 11 hearing, the court
12 gave him "one last chance" to attempt to work out acceptable
13 arrangements,[37] but following the July 11 hearing, on the same day,
14 Read denied in writing to the Trustee's Counsel any authority to
15 communicate with him as the Debtor's attorney.[38]

16     On July 31, 2007, having heard nothing further from Read or
17 the Debtor, the Trustee filed a motion for an order holding the
18 Debtor in contempt of court for her failure to comply with the
19 January 19, 2007 and May 10, 2007 orders (DN 338).  The Debtor
20 responded with a motion for a continuance of that motion (DN 344)
21 and a second affidavit seeking to disqualify the undersigned (DN
22 354).

23 / / /
24 / / /

25 _____
26     36.  Transcript of June 6, 2007 hearing, DN 325, at 12-13.
27     37.  Transcript of July 11, 2007 hearing, DN 194 in Adv. No.
   07-2006 (Exhibit G), 7:25-8:10.
28     38.  Trustee's exhibits filed July 30, 2007, DN 334, Exhibit
   A.

In her motion for a continuance, the Debtor suggested nine possible defenses to the contempt motion, and asserted that she "has always agreed from the inception to cooperate . . . ."  None of the nine defenses addresses in any way the Debtor's failure to produce documents to the Trustee.  The only alleged evidence of cooperation is a May 26, 2007 letter to the Trustee's Counsel, as follows:

> You should accept my proposal for me to answer interrogatories.  I have made this option available to you and Ms. Schuette, your client and presently the interim trustee, now for over nine months.  I am perfectly willing to cooperate, but you do not seem to want to do things the easy way.[39]

The court finds this letter to be evidence of nothing more than the Debtor's ongoing intention to control the manner in which she provides information to the Trustee.  A party to a lawsuit does not have that luxury,[40] even less so a debtor in a bankruptcy case.

The Debtor's second motion to disqualify the undersigned was based on allegations that the undersigned had assumed the role of a party opponent, endangered the Debtor's life, encouraged the Trustee and Trustee's Counsel to make fraudulent claims, retaliated against the Debtor for appealing his orders, and

---

39.  Exhibit C-1 to Debtor's motion to continue the Trustee's contempt motion, DN 344.  In the letter, the Debtor asked the Trustee to "please cancel" his plans for the May 31 examination.  She did not offer alternative dates or locations.

40.  "The court does not abuse its discretion to sanction when it does not make the deposition as easy as possible for the party being deposed."  Hyde & Drath, 24 F.3d at 1167 [terminating sanction affirmed despite court's refusal to allow deposition by telephone or written interrogatories].

1  refused to accommodate her physical disabilities.[41]  With regard to

2  the May 10, 2007 Order, the Debtor argued that the court's

3  ordering of a Rule 2004 examination, when the Trustee had sought a

4  Rule 2005 order, was technically improper, that the court erred in

5  issuing the Rule 2004 order without notice to the Debtor or an

6  opportunity to oppose it, and that the order did not comply with

7  local rules requiring a subpoena and 30 days' notice.  The Debtor

8  was mistaken on all counts,[42] but what is significant about those

9  arguments, for present purposes, is that the Debtor is fully

10  prepared to base her failure to cooperate on technicalities.

11      Further, nowhere in these voluminous filings has the Debtor

12  acknowledged her duty to produce the documents to the Trustee.  At

13  the beginning of the case, the Debtor informed the Trustee that

14  she could not produce the documents at that time because the

15  documents were in Long Beach, whereas she was going to be under

16  house arrest in San Jose.[43]  One of the reasons for her request for

17  a nine-month postponement of the proceedings was that the records

18  were in Los Angeles County and Ventura County.[44]  Yet the Debtor

19  has now been in Long Beach since May 31, 2007, but she has still

---

41.  See, e.g., Debtor's affidavit, DN 354, at 3:14-16:

The judge's personal desire to end these four appeals by
causing the disabled and seriously ill debtor's death or
serious physical harm or just ending the case by entering
her default unfairly now appears to be his present
intention.

42.  Memorandum Decision filed September 24, 2007, DN 384, at
20-22.

43.  Trustee's exhibits filed October 26, 2006, DN 38, Exhibit
B.

44.  Debtor's exhibits filed August 29, 2006, DN 24, Exhibit
C-4, C-7.

- 22 -

not produced the records, except the 40 pages the Debtor seems to
think are enough.

By a memorandum decision and order filed September 24, 2007,
the court denied the Debtor's second motion to disqualify the
undersigned, and at a continued hearing on October 31, 2007, the
court denied the Trustee's motion for an order of contempt against
the Debtor, on grounds set forth below.  The Trustee then served
the notices of deposition that are the subject of the Motion and
the related motions against Gold and Carter.

<u>2. The Debtor's Prior Behavior in this Adversary Proceeding</u>

As with her conduct in the parent case, the Debtor's conduct
in this adversary proceeding underscores her unwillingness to
engage cooperatively in meaningful discovery, so that the matter
may be tried on the merits.

The Trustee filed her complaint commencing this proceeding
over a year ago, on January 3, 2007.  On February 5, 2007, the
Debtor responded with a motion to dismiss the adversary proceeding
and a motion to change venue to the Central District of
California.[45]  On March 14, 2007, she followed up with a motion to
disqualify the undersigned as the judge in the adversary
proceeding.  The court denied all three motions, and the Debtor
appealed.

On February 7, 2007, the Trustee had submitted requests for
entry of the defaults of the Debtor and her co-defendants, Gold

_____

45.  In the motion to change venue, the Debtor claimed, "[t]he
suit also appears to be spurious and frivolous and maintained
solely to harass the debtor.  An independent and competent trustee
in the Central District would not file this suit as there is no
probable cause for it."  Motion to change venue, DN 8 in Adv. No.
07-2006, 2:6-8.

- 23 -

1  and Carter, and the clerk of the court entered their defaults.

2  All three filed motions to set aside the defaults, Gold and

3  Carter, through attorney Raymond Aver, and the Debtor, pro se.  At

4  the April 25, 2007 hearing on the motions, Aver announced his

5  intention to seek to withdraw as counsel for Gold and Carter.  The

6  court granted the motions to set aside the defaults of all three

7  defendants, and fixed a deadline of May 25 for the filing of

8  answers or other responsive pleadings.

9      On April 25, 2007, the Debtor filed a second motion to

10 dismiss the adversary proceeding, this time on the apparently

11 newly-discovered ground that the Debtor had not actually signed

12 the petition commencing the parent bankruptcy case.  The motion

13 was denied on May 11, 2007, and on May 18, 2007, the Debtor filed

14 an answer to the Trustee's complaint.[46]

15     On May 2, 2007, Aver filed a motion to withdraw as counsel

16 for Gold and Carter, and by stipulated order filed May 18, 2007,

17 the court extended the time for Gold and Carter to respond to the

18 complaint to June 15, 2007.  The Trustee and Aver thereafter

19 extended the deadline by informal agreement, Aver's motion to

20 withdraw was granted, and the court again extended the deadline to

21 respond to the complaint, this time to August 17, 2007.

22     On August 17, 2007, Gold and Carter filed three motions each-

23 -a motion to dismiss the adversary proceeding, a motion to change

24 venue to the Central District of California, and a motion to

25 disqualify the undersigned as the judge in the adversary

26

27     46.  Thus, the Debtor's present contention that the Trustee's
    notice of deposition was served before her answer was due is
28 inaccurate.

- 24 -

proceeding.[47]  The Debtor joined in with a second motion to change
venue, a third motion to dismiss, and a second motion to
disqualify the undersigned.  All these motions were denied; all
the defendants appealed.

Each of the motions filed by Gold and Carter bore a striking
similarity to the motions filed at the same time by the Debtor,
and to the Debtor's motions filed earlier in the case.  In short,
it was clear that the Debtor had begun writing for Gold and
Carter.[48]

The Debtor also sought to direct Gold's and Carter's
responses to the Trustee's notices of their depositions.  In her
letter to the Trustee's Counsel, faxed November 6, 2007, she
stated, "I advised the witnesses [Gold and Carter] that they
should request a continuance because you refused to clear the
dates with me and my attorney, so that we could participate."[49]

On November 29, 2007, over nine months after Aver offered to
accept service of the summons and complaint on their behalf,[50] Gold
and Carter finally filed answers to the Trustee's complaint.  The

---

47.  Gold and Carter's motions are addressed more fully in the
court's memorandum decisions on the Trustee's motions to strike
their answers, filed herewith.

48.  In appeals by Gold and Carter, the Bankruptcy Appellate
Panel noted that "[t]he notice of appeal, the statement of election
and all other papers filed with respect to this appeal appear to
have been prepared by the debtor Lebbos."  Orders Dismissing
Appeal, filed December 28, 2007, in Carter v. Schuette (In re
Lebbos), BAP No. EC-07-1429, at 2:9-12, and Gold v. Schuette (In re
Lebbos), BAP No. EC-07-1428, at 2:6-8.

49.  Trustee's exhibits filed November 28, 2007 in Adv. No.
07-2006, DN 295, Exhibit B.

50.  Letter dated February 3, 2007, from Aver to the Trustee's
Counsel, Exhibit A to motion for relief from default, DN 34 in Adv.
No. 07-2006.

1  same day, the Debtor filed a second, much-expanded answer,

2  although she never sought permission to amend the answer she filed

3  on May 18, 2007, as required by Fed. R. Bankr. P. 7015 and Fed. R.

4  Civ. P. 15(a).  Like the motions filed August 17, 2007, the

5  answers filed November 29, 2007 support the conclusion that the

6  Debtor was responsible for the writing of all three, in very large

7  measure, if not entirely.

8  D.   The Debtor's Reasons for Failing to Attend Deposition

9       At no time between the date of the notice of deposition,

10  October 10, 2007, and the scheduled date of the deposition,

11  November 15, 2007, or at all, did the Debtor seek a protective

12  order,[51] despite the fact that throughout this case, she has had no

13  hesitation about filing voluminous pleadings.  Instead, on

14  November 6, 2007, she faxed a letter to the Trustee's counsel,

15  informing him she would not attend.  She did not state that she

16  herself had another engagement that prevented her from attending.

17  She did not offer alternatives dates.

18      Rather, she took the position that the Trustee's Counsel's

19  failure to clear the date of the deposition in advance with her,

20  with John Read, the attorney who has been appearing specially for

21  her, and with her co-defendants excused her from appearing.  With

22  respect to Read, she gave contradictory excuses--first, that "he

23  is not available to attend presently as you refused to clear the

24  date with him," and then, "I have not been able to speak with

25

26      51.  The failure to attend one's deposition or to respond to a
27  request for inspection of documents or property "may not be excused
    on the ground that the discovery sought is objectionable unless the
    party failing to act has a pending motion for a protective order as
28  provided by Rule 26(c)."  Fed. R. Civ. P. 37(d).

1 Attorney Read, as he has not returned my calls."[52]

2     As a second excuse for her refusal to attend the deposition,

3 the Debtor accused the Trustee's Counsel of refusing to "[comply]

4 with [her] medical limitations for the deposition as is required

5 in dealing with a disabled person under the applicable federal

6 law."   Relying on a letter dated August 10, 2007, signed by Harold

7 C. Ochsner, Jr., M.D., she asserted, "any interview with me has to

8 be limited to one hour due to my severe heart and lung diseases."[53]

9     In conclusion, the Debtor purported to impose limitations on

10 the Trustee's Counsel regarding the scheduling and conduct of the

11 deposition.   "[I]f [Read] is not available to assist me further, I

12 will need to be able to obtain another attorney to help me so you

13 will need to clear any date with both him or her and with me and

14 also sign an agreement limiting my examination to one hour as

15 is required for my disabilities."[54]   As set forth above, the Debtor

16 imposed these conditions unilaterally, rather than by way of a

17 motion for a protective order.

18     The court finds that, against the backdrop of this case,

19 these reasons are not sufficient justification for the Debtor's

20 refusal to attend the deposition and to produce the requested

21 documents.   In addition, the record more than supports the

22 conclusion that the Debtor's failure to attend and produce

23 documents was willful and in bad faith.

24 / / /

25

26     52.   Trustee's exhibits filed November 28, 2007 in Adv. No.
07-2006, DN 295, Exhibit B.

27     53.   Id.

28     54.   Id.

- 27 -

First, there is no requirement that a party noticing a deposition clear the date in advance, with either the deponent or his or her attorney. Certainly, that is a common practice, especially where there has been prior cooperation between the parties. In this case, however, the Debtor has made every effort to delay, frustrate, and obstruct the proceedings, a pattern that continued with her response to the notice of deposition. She was served on October 10, 2007, yet she waited until November 6, nine days before the scheduled date of the deposition, to fax her letter to the Trustee's Counsel, knowing he could reply to her only by regular mail.

Next, there is no evidence the Debtor had another commitment on the scheduled date of the deposition, November 15, or was otherwise unable to attend that day. Instead, she would have found any date unacceptable because Read, whom she wanted at the deposition, had not returned her calls, and she had taken no steps to secure the services of another attorney.[55]

In fact, until the Debtor filed her opposition to the Motion, on January 4, 2008, there was no evidence that Read himself had a conflicting commitment on November 15. In other words, as of the

---

55. The Trustee's Counsel stated at the October 31 hearings, at which Read appeared for the Debtor:

> . . . I have noticed Ms. Lebbos' deposition down in Long Beach on November 14th [sic] as part of the trustee's adversary action. I have not received any response from her to the notice. . . . I'm intending to fly down there and be there. I've noticed Mr. Carter's and Mr. Gold's deposition the day before.

Thus, Read was aware of the depositions at least as early as October 31, yet by November 6, he apparently had not returned the Debtor's calls to discuss them.

1  time the Debtor wrote to the Trustee's Counsel on November 6,
2  there was no evidence that either the Debtor or Read could not
3  attend.

4      In her January 4, 2008 opposition, the Debtor raised a new
5  argument--that Read could not have represented her at the
6  deposition because he made a special appearance for her at the
7  same date and time in another adversary proceeding in this court,
8  Adv. No. 06-2314.  There is no evidence, however, that Read would
9  not have been able to attend a deposition that same day at a later
10  hour, or that the Debtor explored that possibility with him.
11  Instead, she simply made up her mind that because the Trustee's
12  Counsel had not cleared the date in advance with both her and
13  Read, she would not appear.  It bears repeating that the Debtor
14  did not seek a protective order on that ground; she simply excused
15  herself from appearing.

16      Most important, the court further finds that, even if Read
17  was actually unable to attend the deposition on November 15, that
18  fact would not constitute sufficient excuse for the Debtor's
19  failure to appear.  Read has made a large number of "special"
20  appearances for the Debtor in this bankruptcy case and the two
21  related adversary proceedings, in direct violation of Rule 83-
22  182(a)(1) of the District Court Local Rules for this district,
23  incorporated in bankruptcy cases in this district by Local
24  Bankruptcy Rule 1001-1.  That rule provides, with exceptions not
25  applicable here, that "no attorney may participate in any action
26  unless the attorney has appeared as an attorney of record."

27      The court has repeatedly asked Read either to substitute into
28  the case as the Debtor's attorney of record or to cease appearing

- 29 -

1  for her; he has done neither.[56]  The court addressed the problems

2  created by this situation in some detail in its memorandum

3  decision, filed September 24, 2007, on the Debtor's motion to

4  disqualify the undersigned.  For example, Read has assured the

5  court he will work with the Debtor and the Trustee's Counsel to

6  arrange for the Debtor's Rule 2004 examination, but has then

7  disclaimed any authority to communicate with the Trustee's Counsel

8  as the Debtor's attorney.[57]

9      The Debtor has known since long before the September 24, 2007

10 decision that the court was concerned about Read's special

11 appearances, and thus, that she would likely need to make other

12 arrangements.[58]  The court finds that neither Read's unavailability

13

---

14      56.  Read and the Debtor give conflicting reasons for his
   continuing "special" appearances.  The Debtor claims she needs
15 Read's services because of her physical disabilities (see DN 358 in
   Adv. No. 07-2006), but there is no reason he could not accommodate
16 her needs as her attorney of record.  Read states that the court
   should allow the special appearances "[b]ecause Ms. Lebbos has no
17 money.  This is strictly pro bono, your Honor."  Transcript of
   October 31, 2007 hearing, Trustee's exhibits filed November 28,
18 2007, DN 295 in Adv. No. 07-2006, Exhibit D, p. 3 of 36.  There is
   no reason Read could not appear as the Debtor's attorney of record
19 on a pro bono basis.

20      The only way to reconcile these two positions is that the
   Debtor wants and/or needs an attorney, Read is willing to be that
21 attorney, at least for court appearances, but wants the freedom to
   opt out at any time, and in the meantime, wants no responsibility
22 to act for the Debtor in out-of-court communications with the
   Trustee's Counsel.  The problem is that Local Rule 83-182(a)(1),
23 for good reason, prohibits appearances except by an attorney of
   record.  There is no exception for attorneys with disabled or
24 impecunious clients.

25      57.  Exhibit A to the Trustee's exhibits filed July 30, 2007,
26 DN 334.

27      58.  The matter was discussed at hearings on May 23, May 24,
   June 6, and July 11, 2007.  See DNs 111 and 112 in Adv. No. 06-
28 2314, DN 325 in the parent case, DN 194 in Adv. No. 07-2006
   (Exhibit G).

- 30 -

1  nor his failure to return the Debtor's calls qualifies as a
2  sufficient excuse for her failure to appear.[59]  On the contrary,
3  the Debtor's use of Read as an excuse and her announcement that
4  she will need yet more time to find another attorney are evidence
5  of bad faith and willfulness in failing to attend the deposition
6  and failing to produce the documents.

7       Next, the court rejects the proposition that the Debtor can
8  prevent the deposition from going forward unless the Trustee's
9  Counsel agrees to limit it to one hour.  The Debtor has previously
10 used this one-hour limitation in an effort to make the Trustee's
11 examination of her prohibitively difficult.  On August 21, 2007,
12 the Debtor wrote to the Trustee's Counsel, knowing he would have
13 to travel from Redding to Long Beach to conduct the examination:

14          Attorney John Read is recovering from a hernia operation
            so I can not present any dates other than tentative
15          dates on Fridays in October for him to be able to come
            down on a Friday when he is not so busy for a one hour
16          interview with me here in Long Beach if you want one.  I
            tentatively provide the following dates:  October 12,
17          19, and 26, 2007.  It has to be for one hour only at mid
            day.  I can not be out and about more than an hour due
18          to my severe heart and lung diseases.[60]

19       The Debtor cites a "medical report" by Harold C. Ochsner,
20 Jr., M.D., dated August 10, 2007, to support this limitation.[61]

21

22       59.  See Henry v. Gill Industries, Inc., 983 F.2d 943, 949
    (9th Cir. 1993) [party's inability to reach an understanding on
23  formal retainer agreement with counsel and fact that party was out
    of town on business are matters that are "hardly 'outside the
24  control of the litigant.'"].

25       60.  Trustee's exhibits filed November 28, 2007, DN 295 in
26  Adv. No. 07-2006, Exhibit B, p. 5 of 8.

27       61.  The Debtor had submitted the report several times earlier
    as an exhibit, but it was not until December 10, 2007, that the
28  Debtor submitted it under cover of an authenticating declaration by
    Dr. Ochsner.

The report is not current.  It does not state that the Debtor may

not be examined at a deposition or that a deposition must be

limited to one hour.  ·At most, it states that she cannot drive

more than 20 miles, and cannot be away from her residence for more

than two hours.  Further, the report has no bearing on the

Debtor's year-and-one-half long failure to produce documents to

the Trustee.

     The Debtor submitted another "medical report" on December 26,

2007, that of Robert Torrano, M.D., dated February 8, 2007.[62]  A

year ago, when the Trustee's Counsel sought further information

from Torrano, the Debtor accused the Trustee's Counsel of trying

to "con her physician into stop[ping] treating her and revising

his report and forfeiting confidentiality."[63]  The Debtor having

opened the door to her medical condition, and relying upon it for

her ongoing failure to cooperate in this case, the Trustee should

be able to explore ways in which the Trustee's right to examine

the Debtor can be reconciled with the Debtor's health situation.[64]

     In his December 12, 2007 letter, the Trustee's Counsel

acknowledged his awareness of the Debtor's health concerns, and

---

     62.  This is the report the Debtor had submitted on
February 15, 2007, DN 154, in response to the January 19, 2007
Order.

     63.  Debtor's opposition, filed March 21, 2007, DN 209, p. 4
and Exhibit C.

     64.  The court notes that, while in San Jose, the Debtor
claimed she could be out of her home for two to four hours, whereas
she now claims she can be out for only two hours, and can be
examined for only one hour.  Yet according to Read, in June 2007,
the Debtor was "feeling much better" now that she was back in Los
Angeles.  Transcript of June 6, 2007 hearing, DN 325, at 6.

stated his proposal for addressing them.[65]  Given the Debtor's prior behavior in this case, the court finds her response to be an unreasonable attempt to limit the Trustee's ability to later challenge in court any decision of the Debtor to cut short the deposition.[66]

In short, the court finds that the Debtor's reliance on the medical reports and her medical condition is but one more example of her determination to control how much information the Trustee gets and how and when she gets it.

E. Consideration of the Five Factors

1. The Public's Interest in the Expeditious Resolution of Litigation

"[T]he public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action."

---

65.  Trustee's exhibits filed January 9, 2008, DN 379 in Adv. No. 07-2006, Exhibit A, p. 3 of 3:

[W]ith respect to the deposition of Ms. Lebbos, based on her health concerns, reasonable accommodations would be made.  Those accommodations will be designed to insure Ms. Lebbos is physically able to provide the testimony required and to actively participate in the deposition. They will also be designed to provide her adequate time for breaks in the deposition so she can rest as necessary.  I have not been provided any current medical reports which set forth what limitations, if any, Ms. Lebbos has with respect to being deposed.  Her current medical condition and any asserted limitations vis a vis testifying at a deposition will need to be provided by her.

66.  Trustee's exhibits filed January 9, 2008, DN 379 in Adv. No. 07-2006, Exhibit B, p. 3 of 3:

I need a definite statement that if my lungs or heart are in distress, I am permitted to adjourn the deposition immediately to use my electric nebulizer, emergency medications, go home or to the doctor or hospital and not be subject to a claim of lack of cooperation.

- 33 -

1 Allen v. Bayer Corp. (In re:  Phenylpropanolamine (PPA) Prods.

2 Liab. Litig.), 460 F.3d 1217, 1227 (9th Cir. 2006), quoting Fed.

3 R. Civ. P. 1.  By contrast, delay "is costly in money, memory,

4 manageability, and confidence in the process."  Allen, 460 F.3d at

5 1227.

6 　　　It is not uncommon for a meeting of creditors in a bankruptcy

7 case to be continued at least once from the initial session.  The

8 continuance is generally for a period of a few weeks at most, to

9 allow the debtor time to gather additional documents for the

10 trustee or the trustee otherwise to investigate particular

11 matters.  In this case, the Debtor has stretched that time to 19

12 months, an extremely rare occurrence.[67]

13 　　　In addition, the documents sought by the Trustee in this

14 adversary proceeding include those sought prior to the initial

15 session of the meeting of creditors, over one and one-half years

16 ago.  The Debtor's failure to produce these documents supports the

17 conclusion that the pattern of delay begun in the parent case and

18 continued into the adversary proceeding, as described above, will

19 continue if a terminating sanction is not imposed.  Clearly, the

20 public's interest in the inexpensive and expeditious handling of

21 bankruptcy cases is not being served.  This factor weighs in favor

22 of a terminating sanction.

23 　　　2. The Court's Need to Manage its Docket

24 　　　Dismissal serves the court's need to manage its docket, when

25 "a [party's] noncompliance has caused the action to come to a

26

27 　　　67.  See Valley Eng'rs., 158 F.3d at 1059, referring to "the
three years wasted in nothing but a struggle to obtain discovery of
28 what should have been promptly produced."

- 34 -

halt, thereby allowing the [party], rather than the court, to control the pace of the docket." Allen, 460 F.3d at 1234, citing Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999).

The Debtor has clogged the court's docket with duplicative motions--sometimes in the parent case and both related adversary proceedings simultaneously. When she has lost, she has tried again, varying her arguments only slightly. The court has seen not one but two motions to terminate the services of the Trustee and Trustee's Counsel, two motions to disqualify the judge in the case, multiple motions to dismiss, and multiple motions to change venue. The Debtor has requested numerous continuances, with the result that the number of hearings conducted is completely disproportionate to the issues in the case. The Debtor has been the strategist and quarterback for motions filed by her co-defendants, and has even drafted their pleadings.

This conduct is made more objectionable by the fact that all of it is traceable solely to the Debtor's determination to prevent the disclosure of information legitimately sought by the Trustee. This factor weighs heavily in favor of a terminating sanction.

3. The Risk of Prejudice to the Party Seeking Sanctions

"Failing to produce documents as ordered is considered sufficient prejudice." Allen, 460 F.3d at 1227, citing Adriana, 913 F.2d at 1412. Further, prejudice is presumed from unreasonable delay, and the burden to show actual prejudice shifts to the party seeking the sanction only after the respondent has given a non-frivolous excuse for the delay. Hernandez v. City of El Monte, 138 F.3d 393, 400-01 (9th Cir. 1998); see also Malone v.

- 35 -

1  United States Postal Service, 833 F.2d 128, 131 (9th Cir. 1987)

2  ["Whether prejudice is sufficient to support an order of dismissal

3  is in part judged with reference to the strength of the

4  plaintiff's excuse for the default."].

5      The court finds the Debtor's excuses for the delays she has

6  caused in the parent case and the adversary proceeding to be

7  deliberate, unjustifiable, and in bad faith.  As accurately

8  expressed in the Motion, the Debtor's tactics have increased

9  administrative expenses and delayed the ultimate distribution to

10  creditors.  Her refusal to be examined and to produce documents

11  drastically impairs the Trustee's ability to test the validity of

12  the Debtor's defenses and, ultimately, to put on her case.[68]  This

13  factor weighs heavily in favor of a terminating sanction.

14      4.  The Public Policy Favoring Disposition of Cases on their

15  Merits

16      This factor normally weighs against a terminating sanction.

17  However, "a case that is stalled or unreasonably delayed by a

18  party's failure to comply with deadlines and discovery obligations

19  cannot move forward toward resolution on the merits."  Allen, 460

20  F.3d at 1228.

21      5.  The Availability of Less Drastic Sanctions

22      Factors that indicate whether a [trial] court has
        considered alternatives include:  "(1) Did the court
23      explicitly discuss the feasibility of less drastic
        sanctions and explain why alternative sanctions would be
24      inadequate? (2) Did the court implement alternative

25

26      68.  "[T]he risk of prejudice to the Defendants in this matter
    is great.  Without the critical information . . ., Defendants point
27  out that they will not only be unable to file dispositive motions,
    but will be unable to fully prepare to try the case."  Bonneville
28  v. Kitsap County, 2007 U.S. Dist. LEXIS 25983 * 12 (W.D. Wash.
    2007).

- 36 -

methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?"

<u>Allen</u>, 460 F.3d at 1228-29, quoting <u>Malone</u>, 833 F.2d at 132.

The test provides "a way [for the court] to think about what to do, not a set of conditions precedent for sanctions or a script that the . . . court must follow." <u>Conn. Gen. Life Ins. Co.</u>, 482 F.3d at 1096. Thus, "it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." <u>Adriana</u>, 913 F.2d at 1413.

The critical test is whether the conduct of the party resisting discovery renders it unlikely that the truth will come out. A terminating sanction is appropriate where "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." <u>Valley Eng'rs.</u>, 158 F.3d at 1058. In such a situation, the court is justified in concluding that no lesser sanction would be effective.

To the extent her prior behavior left any doubt, the Debtor's December 20, 2007 letter to the Trustee's Counsel convinces the court that there is no sanction that would result in the Debtor's compliance with the Trustee's discovery requests. First, the Debtor complained that the Trustee's Counsel had not identified proposed dates for the depositions. "Unless you propose some dates and times, it seems to me that none of the three defendants can respond as your letter makes no sense."[69] The Debtor failed to

---

69. Trustee's exhibits filed January 9, 2008, DN 379 in Adv. No. 07-2006, Exhibit B.

1   inform the Trustee's Counsel of dates that would be acceptable to
2   her or of acceptable locations, stating only that, "I can not
3   agree to any location of your choice due to my traveling
4   restrictions."[70]

5       The Debtor's response concerning the property inspection was
6   to deny in explicit terms the Trustee's Counsel's right to conduct
7   it.  "You are not a witness so you have no right to inspect
8   anything.  You are just a lawyer for a client who is also not a
9   witness."[71]  Thus, although the Debtor failed to object to the
10  inspection prior to the date scheduled, or to file a motion for a
11  protective order, it is clear she will offer no cooperation
12  concerning that discovery request.

13      The Debtor's response concerning the Trustee's request for
14  the documents is perhaps the most telling.  The Trustee's Counsel
15  requested that the parties provide verified responses and copies
16  of all the requested documents by January 4, 2008.  The Debtor
17  replied, "I need to be able to consult with my attorney and can
18  not provide you anything by January 4, 2008."  The Debtor offered
19  no alternative deadline.

---

21      70.  Id.  Five months earlier, on July 23, 2007, the Trustee's
    Counsel asked the Debtor to "confirm you can travel from your
22  residence to the US Trustee's office in downtown Los Angeles," and
    if not, to "indicate how far you can travel and where you would
23  agree to have the examinations conducted."  Trustee's exhibits
    filed July 30, 2007, DN 334, Exhibit B.  Three weeks later, he
24  again requested this information.  Declaration filed August 27,
    2007, DN 358, Exhibit A.  The Debtor's only response was to refer
25  to Dr. Ochsner's report indicating that she could not be out of her
    Long Beach home for more than two hours and could not travel more
26  than 20 miles.  Id., Exhibit B.  This information was and is not
    helpful, as the Debtor has failed to provide the Trustee with her
27  street address in Long Beach.

28      71.  Trustee's exhibits filed January 9, 2008, DN 379 in Adv.
    No. 07-2006, Exhibit B.

As has been seen, the Debtor has been subject to two court orders, those of January 19, 2007 and May 10, 2007, to produce documents to the Trustee.  She has been in violation of those orders since February 21, 2007 and May 31, 2007, respectively. She has had the assistance of attorney Read since at least May of 2007; she can no longer hide behind the need to consult with an attorney.

Further, on February 27, 2007, almost a year ago, the Debtor wrote to the Trustee's Counsel as follows:

> Documents relative to the Aida Madeleine Lebbos No. 2 Trust's Long Beach property at 2121 East First Street will be produced when available and include deeds, trust agreements, refinancing agreements, notes, appraisals, Washington Mutual bank records, Scudder records, Berger funds records and Legg Mason funds and writings.[72]

It is clear from the Debtor's latest response and the passage of eleven months' time that the Debtor has no intention of producing the documents.

The court notes the Debtor's belated, half-hearted reference to January 28-30 as possible deposition dates, and her "understanding" that attorney Ronald Ask has agreed to appear specially, apparently for Gold and Carter, and that Read "indicates it appears" he is also available.[73] [74]  This offer is far too tentative to give the court any confidence.  Further, the Ninth Circuit has "squarely rejected" the proposition that a

---

72.  Exhibit B to Debtor's opposition to motion for Rule 2005 order, filed March 21, 2007, DN 209 (emphasis added).

73.  Debtor's declaration filed January 4, 2008, at ¶ 13.

74.  The court is not impressed with the prospect that yet another attorney may begin appearing "specially" in this case in violation of Local Rule 83-182(a)(1).

belated offer cures a failure to comply with discovery.  <u>Henry</u>, 983 F.2d at 947, citing <u>North Am. Watch Corp. v. Princess Ermine Jewels</u>, 786 F.2d 1447, 1451 (9th Cir. 1986) [order of dismissal affirmed:  "Belated compliance with discovery orders does not preclude the imposition of sanctions."]; <u>G-K Properties v. Redevelopment Agency of San Jose</u>, 577 F.2d 645, 647-48 (9th Cir. 1978) [order of dismissal affirmed:  "last minute tender" of discovery does not cure effects of discovery misconduct].

The Debtor's attitude toward discovery in this matter is plain from the December 20 letter, in which she refers to her attempt to have arrest warrants issued against the Trustee and Trustee's Counsel, opining that these "will end your involvement soon so that anything further with you is unnecessary."  This remark is entirely inconsistent with any intention to cooperate in good faith with the Trustee's discovery requests.

The court notes also the Debtor's pattern of setting forth her version of the facts and defying the Trustee to test them through the discovery process or to challenge them through the adversarial process.

> The claim of delay to the creditors is not correct. They are not parties.  There is no evidence they have any right to anything in Long Beach.  There is no asset there.  The answers confirm there is no asset there, and the plaintiff knew it from the start.[75]

> The trustee and her lawyer filed the fraudulent lawsuit with no facts and no law in support of it, and the lawsuit contains no facts.[76]

/ / /

---

75.  Opposition to Motion, filed January 9, 2008, DN 375 in Adv. No. 07-2006, at 24:18-21.

76.  Motion to disqualify, DN 192 in Adv. No. 07-2006, at 35.

1    Everything [the Trustee's Counsel] has ever filed with
     this Court has been fraudulent and a lie.[77]
2

3        These remarks demonstrate a complete lack of respect for the

4    judicial process, at least in the context of this case and this

5    adversary proceeding.

6        Finally, the Debtor appears to view herself rather than the

7    court as the arbiter of what documents she is required to produce.

8    She has stated:

9        The duty [to surrender books and records] relates solely
         to surrendering recorded information about property of
10       the estate.  It does not require production of anything
         requested by the trustee as claimed in the court's
11       opinion.  Further, 11 U.S.C. section 727 has no duty
         imposed on a debtor to produce any documents.  It states
12       the Court may withhold discharge if the debtor withheld
         recorded information which the officer was entitled to
13       receive.  In sum, there is nothing in the law that
         conforms [sic] the false claim that what the trustee
14       wanted produced was 'legally required.'"[78]

15       Given this attitude, coupled with the Debtor's behavior

16   throughout this case, the court has no confidence whatsoever that

17   she would comply with legitimate discovery requests in the future.

18       Finally, the court will address the issue of prior warnings

19   that the Debtor's behavior might result in case-dispositive

20   sanctions.  The relief that is the subject of the Motion; namely,

21   the striking of the Debtor's answer in this adversary proceeding

22   and the entering of her default, was also the subject of the

23   Trustee's July 31, 2007 motion for an order of contempt, filed in

24   the parent case.  That motion was briefed and argued, and the

25   court stated its findings and conclusions on the record at a

26   _____

27       77.   Declaration opposing contempt motion, DN 362, 3:3-4.

28       78.   Motion for reconsideration, filed January 31, 2007, DN
     137, at 42.

hearing on October 31, 2007, including the following:

> The court finds based on the declaration of Linda
> Schuette in support of the motion that the debtor has
> failed to produce to the trustee or her counsel the
> documents described in the [January 19, 2007 and May 10,
> 2007] orders. . . .

> [T]he court finds that the debtor's failure to appear on
> May 31st was willful and deliberate.

> The court also finds that the debtor failed for a
> period of several months to produce books and records to
> the trustee that were properly requested roughly a year
> ago and that the debtor's failure to do so has been
> deliberate and willful. The court, therefore, concludes
> that the debtor has willfully failed to comply with the
> portion of the . . . January 19, 2007 order that
> required the debtor to produce these books and records.

> The court also concludes that the debtor willfully
> and deliberately failed to comply with those portions of
> the May 10, 2007 order that required her to produce
> these books and records and also that portion of the
> order that required her to appear at the federal
> courthouse in San Jose on May 31, 2007.[79]

The court further found that the Debtor's failure to appear and to produce documents had severely hampered the Trustee's administration of the case, and that the Debtor was responsible for the Trustee's and Trustee's Counsel's time and expense in going to San Jose for the examination.  Id.

With respect to the Debtor's so-called offer to cooperate by answering written questions, the court cautioned the Debtor that "it is simply not up to a bankruptcy debtor to direct the way the trustee is to examine the debtor's financial affairs."  Id.

While acknowledging the need to be sensitive to the Debtor's medical condition, the court rejected the Debtor's attempt to

---

79.  Transcript of October 31, 2007 hearing, Trustee's exhibits filed November 28, 2007, DN 295 in Adv. No. 07-2006, Exhibit D, p. 21 of 36, et seq.

- 42 -

1   limit any examination in the Los Angeles area to one hour at
2   midday on a Friday.

> The debtor's attempt to limit them to one hour in any
> given day is simply unacceptable and does not show,
> again, the kind of commitment and cooperation that
> really is called for under the circumstances.  Id.

6   Finally, however, the court denied the Trustee's motion
7   because she was seeking a remedy in the adversary proceeding,
8   whereas the conduct complained of had occurred in the parent
9   bankruptcy case.  The court found it "too big a leap" from failing
10  to cooperate in a parent case to striking an answer in an
11  adversary proceeding.  Id.

12  The court stated:

> I will note that if this -- if this type of conduct and
> lack of compliance with court order were to take place
> in the adversary proceeding, it very well may be a basis
> for striking an Answer or other responsive pleading . .
> .  Id., p. 28 of 36.

16  These findings and conclusions constituted ample warning to
17  the Debtor that the court would not continue to tolerate the
18  course of conduct she has pursued in the parent case, and that the
19  only reason the contempt motion was denied was that the relief was
20  sought in the adversary, whereas the conduct had occurred in the
21  parent case.  The Debtor was on notice from October 31 that
22  terminating sanctions were likely if she did not cooperate with
23  legitimate discovery requests in the adversary proceeding.[80]

24

---

25      80.  In fact, the possibility was raised as early as June 6,
26  2007, when the Trustee's Counsel first suggested it.  DN 325 at 11.
    As the Debtor's lack of cooperation became more apparent, the court
27  raised the possibility at hearings in both the parent case and the
    other adversary proceeding, Alonso v. Lebbos, Adv. No. 06-2314.
28  The Debtor quoted from these discussions in her second motion to
    disqualify the undersigned (DN 354 at 18-21), and thus, was well
    aware of them.

1    Nevertheless, the Debtor's behavior has persisted in the
2  adversary proceeding, with no evidence that a change will be
3  forthcoming.  The Debtor even denies that the court has ever found
4  her to be in violation of a court order.[81]

5    Although a terminating sanction is an extreme remedy, there
6  comes a time when enough is enough.  When a party has steadfastly
7  refused to comply with court orders, and has demonstrated an
8  habitual pattern of gamesmanship and distortion of facts,
9  terminating sanctions are appropriate and even necessary to
10  preserve the integrity of the judicial process.

11                          III. CONCLUSION

12    The Debtor has written and filed volumes in this case, in
13  which she has vociferously and repeatedly accused nearly everyone
14  involved--the Trustee, the Trustee's Counsel, the Debtor's former
15  attorney--of incompetence, negligence, corruption, fraud, perjury,
16  and other criminal conduct.  Her papers have been demeaning,
17  abusive, and at variance with reality.  She has threatened to seek
18  disbarment proceedings against the Trustee's Counsel and the U.S.
19  Trustee's attorney, and she has had her state court attorney, one
20  Joseph Giovanazzi, suggest in writing to the Los Angeles County
21  Superior Court that warrants should be issued for the arrest of
22  the Trustee and Trustee's Counsel.  The Debtor has continuously
23  engaged in gamesmanship, deceit, and skullduggery in an effort to
24  frustrate the proper administration of her case.
25  / / /
26  / / /
27

28
      81.  Opposition to Motion, filed January 9, 2008, DN 375 in
    Adv. No. 07-2006, at 23 n. 4, 25:5-9.

                              - 44 -

1  Given this behavior on the part of the Debtor, and based on
2  the court's careful search of the record, the court can find
3  nothing to indicate that the parties and the court will ever have
4  "access to the true facts."  Accordingly, the terminating
5  sanctions requested by the Trustee are appropriate, and the court
6  will grant the motion.

7  As required by the amended scheduling order in this adversary
8  proceeding, the Trustee's Counsel has submitted his declaration
9  setting forth the attorney's fees and costs incurred in connection
10  with his travel to Long Beach for the deposition and document
11  production, and in connection with the Motion.  The court has
12  reviewed that declaration, and finds that the amounts charged are
13  reasonable.

14  For the reasons set forth above, the court further finds that
15  the failure of the Debtor to appear and to produce documents was
16  not substantially justified, and that there is no other
17  circumstance that would make an award of attorney's fees and costs
18  unjust.  Thus, in accordance with Fed. R. Civ. P. 37(d),
19  incorporated herein by Fed. R. Bankr. P. 7037, the court will
20  award the Trustee attorney's fees in the amount of $4,400.00 plus
21  costs in the amount of $988.80, a total of $5,388.80, to be paid
22  by the Debtor.

23  The court will issue an order consistent with this
24  memorandum.

25  Dated: February _13_, 2008        _Robert Bardwil_
                                      ROBERT S. BARDWIL
26                                    United States Bankruptcy Judge

27

28

- 45 -

## CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a true copy of the attached document was mailed today to the following entities listed at the address(es) shown below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 41306
Long Beach, CA 90853-1306

DATE: February 13, 2008

_Andrea Lovgren_
Andrea Lovgren