

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

FILED

FEB 2 0 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                              )   Case No. 06-22225-D-7
                                    )
BETSEY WARREN LEBBOS,               )
                                    )
                Debtor.             )
_____        )
                                    )
LINDA SCHUETTE,                     )
                                    )   Adv. Pro. No. 07-2006-D
                Plaintiff,          )
                                    )   Docket Control No. MPD-2
v.                                  )
                                    )
BETSEY WARREN LEBBOS,               )   DATE:  January 16, 2008
et al.,                             )   TIME:  10:00 a.m.
                                    )   DEPT:  D
                Defendants.         )
_____        )

**This memorandum decision is not approved for publication and may
not be cited except when relevant under the doctrine of law of
the case or the rules of claim preclusion or Issue preclusion.**

<u>MEMORANDUM DECISION</u>

   Plaintiff Linda Schuette, the chapter 7 trustee in this case

("the Trustee") seeks an order striking the answer filed by

defendant Jason Gold ("Gold") to the Trustee's complaint in this

adversary proceeding, and entering Gold's default.  For the

reasons set forth below, the court will grant the Trustee's

motion.

/ / /

/ / /

## I. INTRODUCTION

On January 3, 2007, the Trustee filed a complaint seeking to set aside alleged fraudulent transfers, to recover property and/or monetary damages, for turnover of property, and for declaratory relief, thereby commencing this adversary proceeding. The defendants are Betsey Warren Lebbos, the Debtor in this case ("the Debtor"), individually and as a trustee of the Aida Madeleine Lebbos No. 2 Trust, and Jason Gold and Thomas Carter, as co-trustees of the Aida Madeleine Lebbos No. 2 Trust ("the Trust" or the "Aida Madeleine Lebbos Trust").[1]  Aida Madeleine Lebbos is the Debtor's daughter.

On October 10, 2007, the Trustee served on the Debtor, Gold, and Carter three notices of deposition, with requests for production of documents.  The documents were to be produced and the depositions to be conducted on November 14, 2007, at 10:00 a.m. (Carter), November 14, 2007, at 2:00 p.m. (Gold), and November 15, 2007, at 10:00 a.m. (the Debtor), at a video conferencing center in Long Beach, California, where the Debtor resides.[2]

/ / /

/ / /

/ / /

---

1.  The Bankruptcy Appellate Panel has observed that the positions of the three defendants in the adversary proceeding appear to be identical.  Orders Dismissing Appeal, filed December 28, 2007, in Carter v. Schuette (In re Lebbos), BAP No. EC-07-1429, at 2:2-4, and Gold v. Schuette (In re Lebbos), BAP No. EC-07-1428, at 2:5-7 ("Orders Dismissing Appeal").

2.  Gold resides in Huntington Beach, California, which is less than 30 miles from Long Beach.

On November 7, 2007, Gold faxed a letter to the Trustee's counsel, Michael Dacquisto ("Trustee's Counsel"),[3] stating that he could not attend the deposition and would need a continuance of "at least one month."[4]  The Trustee's Counsel responded the same day by letter, advising Gold that he would not cancel or continue the deposition, and that if Gold failed to appear or to produce documents, he would "ask the court for further relief, including a terminating sanction such as striking your answer, if filed, and entering your default."[5]

The Trustee's Counsel appeared at the time and place set for the deposition; Gold did not.  On November 28, 2007, the Trustee filed a motion for a discovery sanction against Gold, in the form of an order striking his answer in this adversary proceeding and entering his default ("the Motion").[6]  The Motion was brought on 14 days' notice, as permitted by the court's Amended Scheduling Order dated October 31, 2007.

/ / /

/ / /

---

3.    Trustee's exhibits, filed November 28, 2007, DN 300, Exhibit B.  (All references to "DN" are to the number of entry of the document on the court's docket.  Unless there is a specific reference to the parent bankruptcy case, the reference will be to the docket in this adversary proceeding.)

4.    As this motion arises out of a discovery dispute, it is relevant that Gold is in his last year of law school, and works as a paralegal.

5.    Trustee's exhibits, DN 300, Exhibit C.

6.    The Trustee filed similar motions with respect to the failure of Thomas Carter and the Debtor to attend their depositions and to produce documents.  The court has issued a separate memorandum decision on the motion against the Debtor, and will issue a separate decision on the motion against Carter.

- 3 -

At the initial hearing on the Motion, on December 12, 2007, the court fixed a briefing schedule.  On January 4, 2008, Gold filed a document called a joinder and declaration,[7] in which he joined in the Debtor's opposition to the Trustee's motion for sanctions against her, and presented opposition to the Trustee's motion against him.

On January 9, 2008, the Trustee filed a reply to Gold's Opposition, and on January 16, 2008, the court heard oral argument.  The following parties appeared:  Michael Dacquisto (by telephone), for the Trustee; Jason Gold (by telephone), on his own behalf;[8] John Read (by telephone), making a special appearance for the Debtor; and Jeralyn Kay Spradlin (by telephone), for creditor George Alonso.

The Motion having been briefed and argued by those parties wishing to be heard, the court took the Motion under submission.

## II. ANALYSIS

This court has jurisdiction over the motion pursuant to 28 U.S.C. sections 1334 and 157(b)(1).  The Motion is a core proceeding under 28 U.S.C. section (b)(2)(A), (E) & (H).

### A. The Meet and Confer Requirement

Gold complains that the Trustee and Trustee's Counsel "refused to meet and confer with [him] as ordered by the court and . . . refuse to file the required meet and confer

---

7.  DN 374, hereinafter "Gold's Opposition."

8.  Since August 3, 2007, the effective date of the order authorizing the withdrawal of his former counsel, Raymond Aver, Gold has represented himself in this adversary proceeding.

- 4 -

1   certifications."[9]   The court addressed this issue in its

2   memorandum decision on the Trustee's motion for sanctions against

3   the Debtor, Docket Control No. MPD-1, and adopts herein its

4   reasoning and conclusions on the issue.

5       With particular regard to Gold, the court finds that in the

6   unique circumstances of this case, the letters exchanged November

7   7, 2007, together with the Trustee's Counsel's follow-up letter

8   of December 12, 2007, satisfied the meet and confer requirement.

9   The court notes that Gold did not respond to the December 12

10  letter, apparently preferring to rely on the Debtor's response.[10]

11  <u>B. Legal Standards for Terminating Sanctions</u>

12      The Motion is brought pursuant to Fed. R. Civ. P. 37(d),[11]

13  incorporated in bankruptcy adversary proceedings by Fed. R.

14  Bankr. P. 7037.

15      Rule 37(d) provides:

16      If a party . . . fails (1) to appear before the officer
        who is to take the deposition, after being served with
17      a proper notice, or . . . (3) to serve a written
        response to a request for inspection submitted under
18      Rule 34, after proper service of the request, the court
        in which the action is pending on motion may make such
19      orders in regard to the failure as are just, and among
        others it may take any action authorized under
20

21
        9.   Gold's Opposition, 3:18-20.
22
        10.   The Debtor's response is discussed in detail in the
23  memorandum decision on the Trustee's sanctions motion against her.

24      11.   Unless otherwise indicated, Rule references are to the
    Federal Rules of Civil Procedure, as enacted and promulgated prior
25  to December 1, 2007.  Effective that date, the Rules were amended
    "to make them more easily understood and to make style and
26  terminology consistent throughout the rules."   The changes were
    "intended to be stylistic only."   Notes of Advisory Committee on
27  2007 Amendments.   Because this case was commenced prior to the
    effective date of the amendments, December 1, 2007, the earlier
28  language will be used.

                              - 5 -

1   subparagraphs (A), (B), and (C) of subdivision (b)(2)
    of this rule. . . .  In lieu of any order or in
2   addition thereto, the court shall require the party
    failing to act . . . to pay the reasonable expenses,
3   including attorney's fees, caused by the failure unless
    the court finds that the failure was substantially
4   justified or that other circumstances make an award of
    expenses unjust.
5
6   The failure to act described in this subdivision may
    not be excused on the ground that the discovery sought
    is objectionable unless the party failing to act has a
7   pending motion for a protective order as provided by
    Rule 26(c).
8

9        In the circumstances listed above, Rule 37(b)(2)(C), in

10  turn, permits the court to enter "[a]n order striking out

11  pleadings or parts thereof, . . . or rendering a judgment by

12  default against the disobedient party. . . ."  Such a sanction is

13  commonly referred to as a terminating sanction, because it

14  terminates the party's right to a trial on the merits.

15       "A terminating sanction, whether default judgment against a

16  defendant or dismissal of a plaintiff's action, is very severe."

17  Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d

18  1091, 1096 (9th Cir. 2007).  As a result, the violation giving

19  rise to the sanction "must be due to the 'willfulness, bad faith,

20  or fault' of the party."  Jorgensen v. Cassiday, 320 F.3d 906,

21  912 (9th Cir. 2003), citing Hyde & Drath v. Baker, 24 F.3d 1162,

22  1167 (9th Cir. 1994), Fjelstad v. Am. Honda Motor Co., 762 F.2d

23  1334, 1341 (9th Cir. 1985).

24       "Disobedient conduct not shown to be outside the control of

25  the litigant is sufficient to demonstrate willfulness, bad faith,

26  or fault."  Jorgensen, 320 F.3d at 912, quoting Hyde & Drath, 24

27  F.3d at 1166.

28  / / /

- 6 -

The Ninth Circuit has created a five-part test, with three subparts to the fifth part, for determining whether a terminating sanction is just:

> "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." [Citation] The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions. [Citation] This "test" is not mechanical.  It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow . . . .

Conn. Gen. Life Ins. Co., 482 F.3d at 1096, quoting Jorgensen, 320 F.3d at 912, and citing Valley Eng'rs v. Electric Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

"[T]he most critical factor is not merely delay or docket management concerns, but truth."  Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

> What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations "threaten to interfere with the rightful decision of the case."

Valley Eng'rs., 158 F.3d at 1057, quoting Adriana Intl. Corp. v. Lewis & Co., 913 F.3d 1406, 1412 (9th Cir. 1990).

> Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves.  That can operate to the advantage of a dishonest, noncompliant party, and can prevent the truth from coming out.

Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

/ / /

Thus, where a "pattern of deception and discovery abuse" has made it impossible for the court to conduct a trial "with any reasonable assurance that the truth would be available," terminating sanctions are appropriate.   "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."  Conn. Gen. Life Ins. Co., 482 F.3d at 1097, quoting Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 352 (9th Cir. 1995).

C. The Debtor's Prior Behavior

Although the Motion is against Gold, for reasons that are set forth below, the court finds that the Debtor's conduct in her parent bankruptcy case and in this adversary proceeding bears on the resolution of the Motion.   Thus, the court incorporates herein the findings and conclusions set forth in its memorandum decision on the Trustee's motion for sanctions against the Debtor, Docket Control No. MPD-1.

D. Gold's Prior Behavior in this Adversary Proceeding

Gold complains that as of October 31, 2007, he needed to hire a lawyer, and that his answer to the Trustee's complaint was not due until November 30, 2007.[12]  Thus, he argues, the Trustee inappropriately noticed his deposition for a time before he had filed his answer.  He omits any mention of his prior behavior in this adversary proceeding.

The Trustee served the summons and complaint on the Debtor on January 10, 2007, and attempted to serve Gold and Carter the same day.  On February 7, 2007, the Trustee filed requests for

_____

12.  Gold's Opposition, at ¶ 5.

- 8 -

entry of defaults of the Debtor, Gold, and Carter, and on
February 13, 2007, the clerk of the court entered their defaults.
On February 20, 2007, attorney Raymond Aver, on behalf of Gold
and Carter, filed a motion for relief from their defaults.[13]  On
February 12, 2007, the Debtor had filed a similar motion on her
own behalf.

A hearing was held on April 25, 2007, at which Aver appeared
for Gold and Carter.  Immediately after the court announced its
intention to set aside the defaults, Aver expressed an intention
to move to withdraw as counsel for Gold and Carter.  He indicated
that Gold and Carter were aware of the issues requiring his
withdrawal, and that they had been "in search of substitute
counsel . . . ."[14]

The court granted the motions to set aside the defaults of
all three defendants, and fixed a deadline of May 25, 2007 for
the filing of answers or other responsive pleadings.

On May 2, 2007, Aver filed a motion to withdraw as counsel
for Gold and Carter, alleging that "[t]he relationship between
[Gold and Carter] and the Aver Firm has suffered an irreparable,

---

13.  One of the grounds for the motion was that Gold did not
reside at the address the Trustee's Counsel had used for service of
the complaint.  Gold and the Debtor have repeatedly attacked the
Trustee's Counsel, claiming that when he filed the request for
entry of default, he knew Gold had not been properly served.  On
the contrary, at that time, Aver had asserted only that "service
. . . was not properly effectuated on the trustees of the Trust."
Motion of Gold and Carter for relief from default, filed February
20, 2007, DN 34, Exhibit A.  The Trustee's Counsel requested
further specifics as to that allegation, in an e-mail to Aver on
February 6.  Id., Exhibit B.  It was only later, in the motion to
set aside the defaults, that Aver disclosed the problem with Gold's
address.

14.  Transcript of April 25, 2007 hearing, DN 327 in Case No.
06-22225, at 38-39.

1  permanent breakdown."[15]  Aver testified that he had had several
2  conversations with Gold regarding the need to obtain replacement
3  counsel.[16]  On May 18, 2007, Aver and the Trustee submitted a
4  stipulated order to extend Gold's and Carter's deadline to file a
5  responsive pleading to June 15, 2007, and the court signed the
6  order (DN 139).

7      On May 22, 2007, Gold filed opposition to Aver's motion to
8  withdraw, contending that Aver had failed to perform competently
9  or had failed to perform the services for which he was hired.[17]
10 Aver failed to appear at the June 6, 2007 hearing on his motion.[18]
11 Gold did appear, and the court continued the hearing to July 11.
12 On June 22, 2007, the court issued a scheduling order,
13 authorizing the parties to begin discovery and setting a
14 discovery bar date of November 30, 2007.[19]

15     At the July 11, 2007 hearing on Aver's motion to withdraw,
16 Aver referred to the "numerous opportunities" Gold and Carter had
17 had to find new counsel, two months having passed since Aver
18 filed his motion to withdraw.  Gold appeared at the hearing, and
19 again complained about what Aver had done and not done.  The
20 court asked Gold why he had not located new counsel.  He

21
22     15.   Motion to withdraw, DN 125, 5:4-5.

23     16.   Id., 12:12-15.

24     17.   Opposition to motion to withdraw, DN 140, ¶ 3.   The court
   notes the lack of logic in finding fault with an attorney and yet
25 wanting to keep him in the case.

26     18.   Transcript of June 6, 2007 hearing, DN 325 in Case No.
   06-22225.

27     19.   Although Aver failed to appear at the June 21, 2007
   status conference that resulted in the scheduling order, he was
28 served with the order.  DN 148.

responded that he "[didn't] have substantial time to go looking
for an attorney at this point," that he didn't believe Aver had
good cause to withdraw, so he had not really looked for a new
attorney, and finally, that he is in Southern California, and it
is hard to find an attorney admitted to practice in the Eastern
District.[20]

When the court indicated it would grant Aver's motion to
withdraw, Gold requested an extension of 30 days to find new
counsel and file a responsive pleading.  The court then stated it
would grant Aver's motion effective August 3, 2007, and Gold
responded, "Okay.  I will have new counsel onboard by then."[21]

As of the July 11 hearing, the formal deadline for Gold and
Carter to file a responsive pleading had passed.  The Trustee's
Counsel explained at the hearing that he had a verbal arrangement
whereby he would give Aver 72 hours' notice before requesting
entry of defaults.  The Trustee's Counsel gave Aver such a notice
on July 20, which prompted a motion by Aver, who was still
attorney for Gold and Carter, to extend the deadline to respond.

The court scheduled the motion for hearing on August 1,
2007, and provided that no default could be entered against Gold
or Carter until after the hearing.  At the August 1 hearing, at
which Gold appeared, the court extended the deadline to answer or
otherwise respond to the complaint to August 17, 2007.  Gold
stated at the August 1 hearing that he "[had] been in contact

_____

20.  Transcript of July 11 hearing, DN 194, Exhibit G, at 12,
13, 14.

21.  Id., at 15.

- 11 -

1  with three separate attorneys to come in on this matter."[22]

2       By the August 17 deadline, three and one-half months had

3  passed since Aver filed his motion to withdraw as counsel for

4  Gold and Carter.  Yet despite the passage of time, and despite

5  Gold's assurance that he would have new counsel by August 3, none

6  of the defendants had counsel by August 17.  On that date, Gold

7  and Carter, acting pro se, each filed three motions--a motion to

8  dismiss the adversary proceeding, a motion to change venue, and a

9  motion to disqualify the undersigned as the judge in the

10  adversary proceeding.  Also on August 17, the Debtor filed her

11  second motion to change venue and her third motion to dismiss the

12  adversary proceeding, and on September 6, her second motion to

13  disqualify the undersigned.

14       Large portions of Gold's and Carter's motions are identical

15  to portions of the motions filed by the Debtor.  The vast

16  majority of the points and authorities submitted as part of

17  Gold's and Carter's motions track the Debtor's points and

18  authorities verbatim.  In fact, with a single exception, the

19  arguments raised by Gold and Carter were raised by the Debtor in

20  her motions to dismiss and to change venue, filed February 5,

21  2007, in her request to disqualify the undersigned, filed March

22  14, 2007, and in her second motion to dismiss, filed April 25,

23  2007, all of which had been denied.[23]  The court finds that these

24  _____

25       22.  Transcript of August 1, 2007 hearing, DN 187, at 5.

26       23.  The single exception was a new argument centering on this
   hand-written notation by the Trustee:  "Lebbos - 7/19 - 341 - Venue
27  - lives [in] Long Beach."  The Debtor, Gold, and Carter all claimed
   this constituted an admission by the Trustee that venue in the
28  Eastern District was improper.  The court found that this was
                                              (continued...)

1 three motions by Gold and Carter bordered on the frivolous, and
2 that they were filed solely for the purposes of delaying this
3 adversary proceeding and frustrating and wearing down the Trustee
4 and Trustee's Counsel.

5     The court also finds, based on these motions, on the three
6 defendants' answers to the complaint, filed November 29, 2007, on
7 the statements of issues on appeal, filed by all three, and on
8 the three defendants' responses to the Trustee's sanctions
9 motions, that the Debtor is writing for Gold and Carter and
10 directing the course of their conduct and responses in this
11 adversary proceeding.[24]

12     The court has considered Gold's testimony to the contrary,[25]
13 and finds it not credible.  The court notes that his testimony is
14 carefully worded.  For example, he states that he researches,
15 drafts, prepares, and signs his own letters.  He does not state
16 that he prepared the pleadings he has filed in this case.  On the
17 contrary, the arguments, the style, the wording, all are the
18 Debtor's.  In fact, Gold acknowledged at the September 12, 2007
19 hearing on his request to disqualify the undersigned that the
20 Debtor prepared the request and Gold reviewed it.

21     In her letter to the Trustee's Counsel, faxed November 6,
22 2007, the Debtor stated, "I advised the witnesses [Gold and

23 _____

24     23. (...continued)
nothing more than the Trustee jotting down notes in the early
25 stages of the case.

26     24.   The Bankruptcy Appellate Panel has noted that the
documents filed by Gold and Carter in their appeals all appear to
27 have been prepared by the Debtor.   Orders Dismissing Appeal, at
2:6-8 (Gold), 2:9-12 (Carter).
28
      25.   Gold's Opposition, ¶ 2.

- 13 -

Carter] that they should request a continuance because you
refused to clear the dates with me and my attorney, so that we
could participate."[26]  In short, the Debtor continues to direct
her co-defendants' behavior in this litigation; as will be seen
below, they have chosen to follow her direction.

E.   Gold's Reasons for Failing to Attend Deposition

At no time between the date of the notice of deposition,
October 10, 2007, and the scheduled date of the deposition,
November 14, 2007, or at all, did Gold seek a protective order.[27]
Instead, on November 7, 2007, he faxed a letter to the Trustee's
Counsel, beginning, "You should have called me about my and my
co-trustee's depositions so we could arrange to have an attorney
present and represent us."[28]  Gold claimed he had not yet been
able to hire an attorney.

Next, as instructed by the Debtor, Gold complained that the
Trustee's Counsel had not cleared the date with her and John
Read, the attorney who has been appearing specially for her.[29]
Gold gave several other reasons for his alleged inability to
appear on November 14--he needed time to clear his work schedule,

---

26.   Trustee's exhibits filed November 28, 2007, DN 295,
Exhibit B.

27.   The failure to attend one's deposition or to respond to a
request for inspection of documents or property "may not be excused
on the ground that the discovery sought is objectionable unless the
party failing to act has a pending motion for a protective order as
provided by Rule 26(c)."  Fed. R. Civ. P. 37(d).

28.   Trustee's exhibits filed November 28, 2007, DN 300,
Exhibit B.

29.   Gold wrote, "I understand Ms. Lebbos has no lawyer to
appear either, and you were asked to clear a date with her and her
specially appearing attorney, John Read, but that you have not done
so."

- 14 -

he had "substantial documents to go through" for the document production, he needed to work as much as possible as he would be going to Philadelphia for the holidays, the case was not ready for discovery as his answer had not yet been filed, and the previous delays in the case had been "the fault of the attorney [he] hired who failed to file an answer and immediately started requesting leave of court to withdraw."

In the first paragraph of his letter, Gold said he would need the depositions continued "for at least one month;" in the second paragraph, he said he would need "at least six week's [sic] notice." Gold did not state that he himself had another commitment that prevented him from attending on November 14. He did not offer alternatives dates.

Attached to Gold's Opposition is a copy of a letter dated November 9, 2007 from Gold to the Trustee's Counsel, reiterating his complaint that the Trustee's Counsel had failed to clear the dates in advance, and adding, "I have a court hearing which I need to attend in San Bernardino on the 14th and I will not be able to attend the deposition."[30]

The court finds that, against the backdrop of this bankruptcy case and this adversary proceeding, these reasons are not sufficient justification for Gold's refusal to attend the deposition and to produce the requested documents. In addition, the record more than supports the conclusion that Gold's failure to attend and produce documents was willful and in bad faith.

/ / /

---

30. Gold's Opposition, Exhibit 1a.

- 15 -

First, the court has addressed the issue of the Trustee's failure to coordinate the deposition dates in advance in its memorandum decision on the Trustee's motion against the Debtor. The court incorporates its findings and conclusions on the issue herein.

Gold's arguments that he needed time to clear his work schedule and that he needed to work as much as possible so he could leave for the holidays reflect nothing more than the demands of everyday life to which everyone is subject; neither qualifies as an acceptable excuse for failing to attend a duly-noticed deposition.  The court notes also that the Trustee's Counsel gave more than a month's notice of the deposition, more than is commonly given, and more than enough time to clear one's work schedule.

Gold's next excuse was that he had "substantial documents" to go through for the document production.  This argument might carry some weight if Gold had managed to produce any documents in the three months that have passed since; so far as the court is aware, he has produced none.  The argument is also undermined by Gold's statement to the Trustee's Counsel on December 12, 2007, that he had some documents pertaining to the Trust, but that the majority were in the Debtor's possession.[31]

Next, there is no evidence that Gold had another unavoidable commitment on the scheduled date of the deposition, November 14. It is significant that Gold made no mention of the San Bernardino hearing the first time he wrote to the Trustee's Counsel, on

---

31.   Trustee's exhibits, DN 383, Exhibit A, p. 2.

- 16 -

1  November 6, 2007.[32]  When he did bring it up, on November 9, he
2  provided no information from which the pendency of the San
3  Bernardino hearing could be verified.  He did not state that he
4  was a party to the proceeding, that he would be making an
5  appearance for a party, or that his presence was required for
6  some other reason.  He did not state that the San Bernardino
7  hearing could not be rescheduled, or that he had attempted to
8  reschedule it so as to be able to attend the deposition.  His
9  reference to the San Bernardino hearing is far too vague to allow
10 the court to conclude that Gold could not attend the deposition.

11      Next, the court rejects Gold's contention that his
12 deposition should have been continued because he had yet to hire
13 an attorney.  Gold had been on notice since before April 25, 2007
14 that he would need counsel to replace Aver.  The excuses Gold
15 offered at the July 11, 2007 hearing--that he did not have time
16 to look for new counsel, that he did not believe Aver had good
17 cause to withdraw, and that it was difficult for him to find an
18 attorney admitted in this district--reflect an intention to
19 obstruct the proceeding rather than an intention to actually hire
20 counsel and participate in the proceeding in good faith.

21      Gold assured the court he would have new counsel "onboard"
22 by August 3.  His failure to retain replacement counsel by the
23 time of the Trustee's notice of deposition reflects a deliberate
24 choice on Gold's part.  In his Opposition, Gold stated that

25

26
_____
27     32.  Although Gold does not specifically refer in his
    Opposition to his November 6, 2007 letter to the Trustee's Counsel,
    he does not deny that he sent it, and in fact, acknowledges the
28  existence of the letter by referring to the Trustee's Exhibit B
    (Gold's Opposition, 4:9).

- 17 -

attorney Ron Ask had agreed to appear specially on January 28, 29, and 30, 2008 for Gold and Carter.   Attorney Ask himself never contacted the Trustee's Counsel.[33]   That Gold and Carter had succeeded only in bringing in yet another attorney to make special appearances, in violation of this court's local rule,[34] underscores the recurrent theme of deliberate delay and obstruction in this case.[35] [36]

Next, Gold asserts that the scheduling of the deposition before his answer to the complaint was due was improper.   On the contrary, in a scheduling order filed June 22, 2007, the court opened discovery pursuant to Fed. R. Civ. P. 26(d), incorporated in this proceeding by Fed. R. Bankr. P. 7026, and imposed a discovery bar date of November 30, 2007.   Further, Gold has been aware of this lawsuit since at least February 12, 2007, when Aver filed the motion to set aside the defaults.   That Gold's deadline

---

33.   Declaration of Michael Dacquisto, filed January 9, 2008, DN 382, ¶ 6.

34.   Rule 83-182(a)(1) of the District Court Local Rules for this district, incorporated in bankruptcy cases in this district by Local Bankruptcy Rule 1001-1.

35.   In fact, as of December 5, 2007, Carter "[had] not cleared these dates [January 28, 29, 30] with his employer" (Carter's joinder in motion for continuance, DN 337), and there is nothing in Carter's opposition, filed January 4, 2008 (DN 376) to indicate he had cleared the dates by that time.

36.   The Ninth Circuit has "squarely rejected" the proposition that a belated offer cures a failure to comply with discovery. Henry v. Gill Industries, Inc., 983 F.2d 943, 947 (9th Cir. 1993), citing North Am. Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th Cir. 1986) [order of dismissal affirmed:   "Belated compliance with discovery orders does not preclude the imposition of sanctions."]; G-K Properties v. Redevelopment Agency of San Jose, 577 F.2d 645, 647-48 (9th Cir. 1978) [order of dismissal affirmed:   "last minute tender" of discovery does not cure effects of discovery misconduct].

- 18 -

1   to answer was ultimately deferred until November 30, 2007 was the
2   result of delays caused by Gold and by his difficulties with
3   Aver, the attorney of Gold's choosing.

4       Finally, Gold's attempt to attribute the delays in the case
5   to Aver works, if at all, only up to the time Aver withdrew,
6   effective August 3, 2007.

7       In his Opposition, Gold raises the new argument that the
8   Trust has no money to pay expenses, and complains that the
9   Trustee's Counsel has prevented the Trust from borrowing against
10  the real property that is the subject of this adversary
11  proceeding.  This is apparently offered as an excuse for the
12  failure to retain counsel or for the decision to have an attorney
13  appear specially.

14      First, the court has already largely shifted the cost of
15  conducting discovery in this case to the Trustee by requiring her
16  counsel to travel to Southern California to accommodate the
17  Debtor's alleged travel restrictions, a situation that benefits
18  Gold, in terms of both time and money.  Next, although Gold
19  complains that the Trustee's lis pendens has prevented him from
20  borrowing against the property, that is the nature of this type
21  of litigation.  Third, lack of financial means does not excuse
22  compliance with legitimate discovery requests.[37]  If it did, every
23  indigent party would be excused from the rules of discovery.
24  Finally, Gold presumably chose to serve as a trustee of the Aida
25  Madeleine Trust voluntarily, and thereby accepted all the

26

27      37.  See Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1452
    (9th Cir. 1994), citing Malone v. United States Postal Service, 833
28  F.2d 128 (9th Cir. 1987) [lack of financial means to comply with a
    court order does not excuse unreasonable delay].

1 | responsibilities of that role, including compliance with
2 | discovery requests in lawsuits involving the Trust.

3 | In short, the court finds that Gold's excuses for failing to
4 | attend the deposition and failing to produce the required
5 | documents reflect an intention to prevent the Trustee from
6 | acquiring information about the issues raised in her complaint,
7 | and to prevent a trial on the merits after the timely completion
8 | of legitimate discovery. The court finds Gold's failure to act
9 | to have been deliberate, willful, and in bad faith.

10 | F. Consideration of the Five Factors

11 | 1. The Public's Interest in the Expeditious Resolution of
12 | Litigation

13 | "[T]he public has an overriding interest in securing 'the
14 | just, speedy, and inexpensive determination of every action."
15 | Allen v. Bayer Corp. (In re:  Phenylpropanolamine (PPA) Prods.
16 | Liab. Litig.), 460 F.3d 1217, 1227 (9th Cir. 2006), quoting Fed.
17 | R. Civ. P. 1. By contrast, delay "is costly in money, memory,
18 | manageability, and confidence in the process." Id.

19 | The documents the Trustee seeks from Gold concern,
20 | exclusively, the Aida Madeleine Lebbos Trust and the property the
21 | Debtor alleges is owned by the Trust.[38] The Trustee has been
22 | seeking these documents from the Debtor for over one and one-half
23 | years, without success. It is clear that Gold intends to follow
24 | the Debtor's direction and lead with regard to the documents, and
25 | to extend as long as possible the pattern of delay and
26 | obstruction the Debtor has initiated and pursued.

27 |
28 |

38.   Trustee's exhibits, DN 300, Exhibit A.

In his follow-up letter to all three defendants, on December 12, 2007, the Trustee's Counsel asked for the documents by January 4, 2008.  Gold did not respond to that letter and did not produce the documents.  Instead, on January 4, he filed his joinder and declaration in opposition to the Motion, in which he stated that this lawsuit is frivolous and requested sanctions of $80,000, just as the Debtor had done.  Gold accused the Trustee and Trustee's Counsel of violating court orders, of refusing to communicate with him to work out an agreement, and of wasting time and money.

Gold failed to mention in any way the Trustee's request for the documents, or to suggest that he needed more time to produce them, or to set forth the steps he had taken to comply.  He testified under oath that he spent over 26 hours on this matter, yet he apparently has spent no time gathering the documents, despite his assurance to the Trustee's Counsel on December 12 that he would do so.[39]

In similar fashion, Gold has delayed since April of 2007 finding replacement counsel for Aver, yet he still uses his lack of counsel as a roadblock to the Trustee's discovery efforts.

The court concludes that Gold has exhibited the same intention to delay, obstruct, frustrate, and wear down the Trustee and Trustee's Counsel as has the Debtor throughout this case.  Clearly, the public's interest in the inexpensive and expeditious handling of bankruptcy cases is not being served. This factor weighs heavily in favor of a terminating sanction.

---

39.   Trustee's exhibits, DN 383, Exhibit A, p. 2.

1    2. The Court's Need to Manage its Docket

2        Dismissal serves the court's need to manage its docket, when

3    "a [party's] noncompliance has caused the action to come to a

4    halt, thereby allowing the [party], rather than the court, to

5    control the pace of the docket."  Allen, 460 F.3d at 1234, citing

6    Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir.

7    1999).

8        Gold has clogged the court's docket with motions to dismiss,

9    to change venue, and to disqualify the undersigned that were

10   duplicative of motions previously filed by the Debtor and denied

11   by the court.  He has adopted the Debtor's arguments in his

12   efforts to avoid complying with the Trustee's discovery requests.

13   As with the Debtor, this conduct appears geared solely toward

14   preventing the disclosure of relevant information and obstructing

15   the timely resolution of this adversary proceeding on its merits.

16   This factor weighs heavily in favor of a terminating sanction.

17       3. The Risk of Prejudice to the Party Seeking Sanctions

18       "Failing to produce documents as ordered is considered

19   sufficient prejudice."  Allen, 460 F.3d at 1227, citing Adriana,

20   913 F.2d at 1412.  Further, prejudice is presumed from

21   unreasonable delay, and the burden to show actual prejudice

22   shifts to the party seeking the sanction only after the

23   respondent has given a non-frivolous excuse for the delay.

24   Hernandez v. City of El Monte, 138 F.3d 393, 400-01 (9th Cir.

25   1998); see also Malone, 833 F.2d 128, 131 (9th Cir. 1987)

26   ["Whether prejudice is sufficient to support an order of

27   dismissal is in part judged with reference to the strength of the

28   plaintiff's excuse for the default."].

- 22 -

Gold deliberately and without justification failed to appear
for his deposition and failed to produce requested documents.
Whether he is "in control of [his] own defense," as he claims,[40]
or is taking direction from the Debtor, his conduct has increased
administrative expenses and delayed the ultimate distribution to
creditors.  His refusal to be examined and to produce documents
drastically impairs the Trustee's ability to test the validity of
his defenses and, ultimately, to put on her case.[41]  This factor
weighs heavily in favor of a terminating sanction.

    4. The Public Policy Favoring Disposition of Cases on their
Merits

    This factor normally weighs against a terminating sanction.
However, "a case that is stalled or unreasonably delayed by a
party's failure to comply with deadlines and discovery
obligations cannot move forward toward resolution on the merits."
Allen, 460 F.3d at 1228.

    5. The Availability of Less Drastic Sanctions

        Factors that indicate whether a [trial] court has
        considered alternatives include:  "(1) Did the court
        explicitly discuss the feasibility of less drastic
        sanctions and explain why alternative sanctions would
        be inadequate? (2) Did the court implement alternative
        methods of sanctioning or curing the malfeasance before
        ordering dismissal? (3) Did the court warn the
        plaintiff of the possibility of dismissal before
        actually ordering dismissal?"

/ / /

─────────────────────

    40.  Gold's Opposition, ¶ 2.

    41.  "[T]he risk of prejudice to the Defendants in this matter
is great.  Without the critical information . . ., Defendants point
out that they will not only be unable to file dispositive motions,
but will be unable to fully prepare to try the case."  Bonneville
v. Kitsap County, 2007 U.S. Dist. LEXIS 25983 * 12 (W.D. Wash.
2007).

1  <u>Allen</u>, 460 F.3d at 1228-29, quoting <u>Malone</u>, 833 F.2d at 132.[42]

2       The test provides "a way [for the court] to think about what

3  to do, not a set of conditions precedent for sanctions or a

4  script that the . . . court must follow."  <u>Conn. Gen. Life Ins.</u>

5  <u>Co.</u>, 482 F.3d at 1096.  Thus, "it is not always necessary for the

6  court to impose less serious sanctions first, or to give any

7  explicit warning."  <u>Adriana</u>, 913 F.2d at 1413.

8       The critical test is whether the conduct of the party

9  resisting discovery renders it unlikely that the truth will come

10 out.  A terminating sanction is appropriate where "a party's

11 discovery violations make it impossible for a court to be

12 confident that the parties will ever have access to the true

13 facts."  <u>Valley Eng'rs.</u>, 158 F.3d at 1058.  In such a situation,

14 the court is justified in concluding that no lesser sanction

15 would be effective.

16      As indicated above, the court concludes that the Debtor has

17 written substantially all of the documents filed by Gold in this

18 adversary proceeding.  She has developed and implemented a

19 pattern of delaying and impeding the progress of the action, a

20 pattern Gold has followed without exception.

21      Gold's motions to dismiss the action, to change venue, and

22 to disqualify the undersigned all were functionally the same as

23

_____

24      42.  Alternative sanctions may include "a warning, a formal
   reprimand, placing the case at the bottom of the calendar, a fine,
25 the imposition of costs or attorney fees, the temporary suspension
   of the culpable counsel from practice before the court, . . .
26 dismissal of the suit unless new counsel is secured[,] . . .
   preclusion of claims or defenses, or the imposition of fees and
27 costs upon plaintiff's counsel. . . ."  <u>Malone</u>, 833 F.2d at 132 n.
   1, quoting <u>Titus v. Mercedes Benz of North America</u>, 695 F.2d 746,
28 749 n. 6 (3rd Cir. 1982).

                              - 24 -

the Debtor's.[43]  Gold's response to the Trustee's discovery
requests and to the sanctions motion mirrored the Debtor's.  His
interest in this proceeding is clearly aligned with hers, and he
has given the court no reason to expect that he will not follow
her direction in the future.

The Debtor stated in her December 20, 2007 letter to the
Trustee's Counsel, in response to his request that the documents
be produced by January 4, 2008, "I need to be able to consult
with my attorney and can not provide you anything by January 4,
2008."  It is highly unlikely the Debtor will allow Gold to
produce the documents she herself has so assiduously withheld.
Gold has given the court no reason to conclude he will produce
these documents on his own, without the Debtor's consent.  He did
not even respond to the Trustee's Counsel's December 20 letter,
preferring to rest on the Debtor's response.  The court has
already concluded that no lesser sanction than a terminating
sanction would be effective as to the Debtor.  The court finds no
reason for a different conclusion with respect to Gold.[44]

---

43.  Similarly, the Bankruptcy Appellate Panel found that
"[t]he similarity of the papers and issues in each appeal indicates
that all of these appeals are functionally the same."  (Orders
Dismissing Appeal, at 3:22-23 (Gold), 3:27-28 (Carter)).

44.  Any lesser sanction would certainly include monetary
sanctions.  However, in this instance, this court agrees with the
court that concluded:

> [T]o impose a fine would merely "introduce into
> litigation a sporting chance theory encouraging parties
> to withhold vital information from the other side with
> the hope that the withholding may not be discovered and,
> if so, that it would only result in a fine."

G-K Properties, 577 F.2d at 647, quoting the bankruptcy court in
that case.

- 25 -

In these circumstances, the court finds that a terminating sanction will not unfairly punish Gold for the Debtor's conduct. Courts have imposed terminating sanctions despite the argument that they would unfairly punish the party for the misconduct of his or her attorney. <u>Malone</u>, 833 F.2d at 134, citing <u>Chism v. National Heritage Life Ins. Co.</u>, 637 F.2d 1328, 1332 (9th Cir. 1981), overruled on other grounds, <u>Bryant v. Ford Motor Co.</u>, 844 F.2d 602, 605 (9th Cir. 1987).

> [I]t must be remembered that Appellant "voluntarily chose (his attorneys) as his representative(s) in the action, and he cannot now avoid the consequences of the acts or omissions of (these) freely selected agent(s)."

<u>Chism</u>, 637 F.2d at 1332, citing <u>Link v. Wabash Railroad Co.</u>, 370 U.S. 626, 633-34 (1962).

Courts have also held parties responsible for one another's conduct in determining whether terminating sanctions are appropriate.

> Adriana argues that even if the default was proper, it could only be entered against those individuals who themselves engaged in misconduct.  Even assuming Adriana's theory is correct, Zade, Kunz, and Midgen "participated" in misconduct in this case through their involvement with Adriana Corporation. . . . Adriana's argument that misconduct by one party cannot be grounds for sanctioning an "innocent" party fails because none of the parties in this case are "innocent."

<u>Adriana</u>, 913 F.2d at 1414.

> [T]he interrogatories and the court's order were directed to Genesco and G-K Properties jointly, and, what is more important, answers were made jointly and through common counsel.  There is no indication in the record that G-K Properties ever sought to free itself from a duty to comply with the court's discovery order.  G-K Properties was content to rest its response to the motions to produce and for dismissal on a common basis with that of Genesco even to the time when the trial court dismissed the action.  Absent an earlier objection or some effort by G-K Properties to act

- 26 -

1  independently of its co-plaintiff, we cannot say that
2  the district court erred in dismissing the action as to
   both appellants.

3  G-K Properties, 577 F.2d at 648-49.

4      Gold voluntarily chose to allow the Debtor to act, in

5  essence, as his agent in this matter, permitting her to draft his

6  pleadings and to direct his response to the Trustee's discovery

7  requests.  He participated in her misconduct through his

8  involvement with her.  He has been "content to rest his response"

9  on "a common basis" with the Debtor's, and he has failed to "act

10 independently" of her in any way.  In these circumstances, he

11 cannot avoid responsibility for her actions, and terminating

12 sanctions are as appropriate as to him as they are to her.

13     Moreover, Gold's own misconduct deprives him of "innocent

14 party" status.  He delayed inexcusably in seeking new counsel,

15 and then relied on that delay in refusing to appear for his

16 deposition and refusing to produce documents.  He delayed in

17 answering the complaint, and then relied on the repeatedly

18 extended due date for his answer in refusing to act.  He has

19 delayed in producing documents with no explanation whatsoever,

20 even after he assured the Trustee he would produce the documents.

21 He failed to respond to the Trustee's Counsel's seven-part

22 proposal for resolution of the discovery issues, and then accused

23 the Trustee's Counsel of "refus[ing] to communicate with [Gold]

24 to work out an agreement."[45]  The court finds that any lesser

25 sanction than a terminating sanction would be ineffective.

26 / / /

27

28     45.  Gold's Opposition, 3:15-16.

- 27 -

Finally, the court will address the issue of prior warnings that Gold's behavior might result in case-dispositive sanctions. First, the Ninth Circuit has "expressly rejected the argument that an express warning regarding the possibility of dismissal is a prerequisite to a Rule 41(b) dismissal [failure to prosecute] when dismissal follows a noticed motion under Rule 41(b)." Moneymaker, 31 F.3d at 1455, citing Morris v. Morgan Stanley & Co., 942 F.2d 648, 652 (9th Cir. 1991).[46]  Although Moneymaker involved a dismissal under Fed. R. Civ. P. 41(b), rather than under Rule 37(d), the five factors for consideration are identical to those considered in Rule 37(d) cases.  See Moneymaker, 31 F.3d at 1451.  Further, the Ninth Circuit has also held that an individualized warning is not necessarily a prerequisite to a terminating sanction under Rule 37.  Allen, 460 F.3d at 1237.

In this case, there was no warning specifically directed to Gold that his failure to comply with discovery requests might result in the striking of his answer and the entering of his default.  However, the court delivered a stern warning to the Debtor regarding the possibility of these same consequences in findings and conclusions stated on the record on October 31,

---

46.

[I]n this case, CoBen filed a motion to dismiss, and Moneymaker filed an opposition and participated in the hearing on dismissal, giving him an opportunity to remedy the matter by accounting for any delay and showing the court why his actions should be decided on their merits. The four-year delay, Moneymaker's repeated late filings, and the prejudice to CoBen make this case so egregious that a court warning before dismissal was not necessary.

Moneymaker, 31 F.3d at 1455.

2007, at a hearing at which Gold appeared by telephone.[47]  The

Trustee's motion for contempt against the Debtor, that generated

those findings and conclusions, was served on Aver, then counsel

for Gold and Carter, and was briefed and argued.

In the October 31 ruling, the court detailed the Debtor's

repeated failures to appear for examination and to produce

documents, in large part the same documents the Trustee was

seeking from Gold.  Gold cannot possibly have believed the

warning might not also apply to him.[48]  The findings and

conclusions came a week before Gold responded to the Trustee's

Counsel, and thus, at a time when Gold had the opportunity to

heed the warning.  The court concludes that these findings and

conclusions constituted ample warning to Gold that terminating

sanctions were likely if the Debtor and Gold did not cooperate

with legitimate discovery requests.

### III. CONCLUSION

In the final analysis, the court must determine whether a

"pattern of deception and discovery abuse" has made it impossible

for the court to conduct a trial "with any reasonable assurance

that the truth would be available," Conn. Gen. Life Ins. Co.,

482 F.3d at 1097, quoting Anheuser-Busch, Inc., 69 F.3d 337, 352

(9th Cir. 1995); in other words, whether the discovery violations

"threaten to interfere with the rightful decision of the case."

---

47.  Transcript of October 31, 2007 hearing, Trustee's
exhibits filed November 28, 2007, DN 300, Exhibit D.

48.  In fact, Gold had previously complained that the court
was identifying Gold and Carter with the Debtor, and was treating
the three defendants as a single party.  Request to disqualify the
undersigned, DN 165, ¶s 6, 12, 20.

- 29 -

<u>Valley Eng'rs.</u>, 158 F.3d at 1057, quoting <u>Adriana</u>, 913 F.3d 1406, 1412 (9th Cir. 1990).

In his response to the Motion, Gold has declared that this lawsuit is "frivolous," that it "has to be dismissed due to the twelve intentional violations by the plaintiff of the court order," that the Trustee's Counsel should not be permitted to inspect the property, as "[h]e is not competent about real estate and he knows nothing about anything in Los Angeles County," and that the Trustee's Counsel "is just exerting coercion and duress to try and get monies for himself."[49]  "There is no right of any creditor or him [the Trustee's Counsel] to anything but he and the plaintiff have ignored the facts."[50]

These remarks demonstrate that Gold views himself as the arbiter of what discovery should be permitted and as the arbiter of the facts in the case.  They reveal a serious misunderstanding of the judicial process and a determination to prevent the facts from being tested in the context of a trial.  That these statements are made in opposition to a motion for terminating sanctions leaves the court with no confidence at all that if lesser sanctions were applied, the truth would ultimately come out.  Thus, terminating sanctions are appropriate, and accordingly, the court will grant the Motion.

/ / /

---

49.  Gold's Opposition, ¶s 1, 3, 6, 9.  The issue of the alleged twelve violations was addressed in the court's memorandum decision on the Trustee's sanctions motion against the Debtor.  The argument that the Trustee or her counsel violated the scheduling order, whether once or twelve times, is frivolous.

50.  <u>Id.</u>, ¶ 9.

1    As required by the amended scheduling order in this

2 adversary proceeding, the Trustee's Counsel has submitted his

3 declaration setting forth the attorney's fees and costs incurred

4 in connection with his travel to Long Beach for the deposition

5 and document production, and in connection with the Motion.  The

6 court has reviewed that declaration, and finds that the amounts

7 charged are reasonable.

8    For the reasons set forth above, the court further finds

9 that Gold's failure to appear and to produce documents was not

10 substantially justified, and that there is no other circumstance

11 that would make an award of attorney's fees and costs unjust.

12 Thus, in accordance with Fed. R. Civ. P. 37(d), incorporated

13 herein by Fed. R. Bankr. P. 7037, the court will award the

14 Trustee attorney's fees in the amount of $2,475.00 plus costs in

15 the amount of $983.40, a total of $3,458.40, to be paid by Gold.

16    Of this total sum of $3,458.40, the sum of $2,609.40 is a

17 joint and several responsibility among defendant Betsey Warren

18 Lebbos, defendant Jason Gold, and defendant Thomas Carter, and

19 the balance, $849.00, is payable solely by Gold.

20    The court will issue an order consistent with this

21 memorandum.

22 Dated: February 20, 2008        *Robert Bardwil*

                                   ROBERT S. BARDWIL

23                                 United States Bankruptcy Judge

24

25

26

27

28

- 31 -

## CERTIFICATE OF MAILING

    .The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a true copy of the attached document was
mailed today to the following entities listed at the address(es)
shown below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 41306
Long Beach, CA 90853-1306

Jason Gold
17091 Elm Street, Suite 3
Huntington Beach, CA 92646


DATE: February 20, 2008

Andrea Lovgren