

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

FILED

FEB 2 1 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 06-22225-D-7 |
| BETSEY WARREN LEBBOS, | |
| Debtor. | |
| LINDA SCHUETTE, | |
| Plaintiff, | Adv. Pro. No. 07-2006-D |
| v. | Docket Control No. MPD-3 |
| BETSEY WARREN LEBBOS, et al., | DATE:  January 16, 2008 |
| Defendants. | TIME:  10:00 a.m. |
| | DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or Issue preclusion.**

<u>**MEMORANDUM DECISION**</u>

Plaintiff Linda Schuette, the chapter 7 trustee in this case ("the Trustee") seeks an order striking the answer filed by defendant Thomas Carter ("Carter") to the Trustee's complaint in this adversary proceeding, and entering Carter's default.  For the reasons set forth below, the court will grant the Trustee's motion.

/ / /

/ / /

I. INTRODUCTION

On January 3, 2007, the Trustee filed a complaint seeking to set aside alleged fraudulent transfers, to recover property and/or monetary damages, for turnover of property, and for declaratory relief, thereby commencing this adversary proceeding. The defendants are Betsey Warren Lebbos, the Debtor in this case ("the Debtor"), individually and as a trustee of the Aida Madeleine Lebbos No. 2 Trust, and Jason Gold and Thomas Carter, as co-trustees of the Aida Madeleine Lebbos No. 2 Trust ("the Trust" or the "Aida Madeleine Lebbos Trust").[1]  Aida Madeleine Lebbos is the Debtor's daughter.

On October 10, 2007, the Trustee served on the Debtor, Gold, and Carter three notices of deposition, with requests for production of documents.  The documents were to be produced and the depositions to be conducted on November 14, 2007, at 10:00 a.m. (Carter), November 14, 2007, at 2:00 p.m. (Gold), and November 15, 2007, at 10:00 a.m. (the Debtor), at a video conferencing center in Long Beach, California, where the Debtor resides.  Carter also resides in Long Beach, in the condominium that is the subject of this adversary proceeding.

On October 29, 2007, the Trustee served an amended notice of deposition, changing the time of Carter's deposition from 10:00 a.m. to 1:00 p.m. on November 14, 2007.

/ / /

---

1.  The Bankruptcy Appellate Panel has observed that the positions of the three defendants in the adversary proceeding appear to be identical.  Orders Dismissing Appeal, filed December 28, 2007, in Carter v. Schuette (In re Lebbos), BAP No. EC-07-1429, at 2:2-4, and Gold v. Schuette (In re Lebbos), BAP No. EC-07-1428, at 2:5-7 ("Orders Dismissing Appeal").

On November 7, 2007, Carter caused to be faxed to the Trustee's counsel, Michael Dacquisto ("Trustee's Counsel"), a letter stating in part:

> I am in Las Vegas on that date [November 14], and you should write me with other possible dates for you to come down and get my statement.  You are wrong in trying to take property which belongs to Mrs. Lebbos' daughter and children.[2]

Carter asked the Trustee's Counsel to "give [him] several dates that are at least a month away. . . ."

The Trustee's Counsel responded the same day by letter, advising Carter that he would not cancel or continue the deposition, and that if Carter failed to appear or to produce documents, he would "ask the court for further relief, including a terminating sanction such as striking your answer, if filed, and entering your default."[3]  Carter states he did not receive this letter.[4]

The Trustee's Counsel appeared at the time and place set for the deposition; Carter did not.  On November 28, 2007, the Trustee filed a motion for a discovery sanction against Carter, in the form of an order striking his answer in this adversary proceeding and entering his default ("the Motion").  The Motion was brought on 14 days' notice, as permitted by the court's Amended Scheduling Order dated October 31, 2007.

---

2.   Trustee's exhibits, filed November 28, 2007, DN 305, Exhibit C, p. 3.  (All references to "DN" are to the number of entry of the document on the court's docket.  Unless there is a specific reference to the parent bankruptcy case, the reference will be to the docket in this adversary proceeding.)

3.   Trustee's exhibits, DN 305, Exhibit E.

4.   Carter's joinder and opposition, filed January 4, 2008, DN 376, ¶ 4.

1    At the initial hearing on the Motion, on December 12, 2007,

2  the court fixed a briefing schedule.  On January 4, 2008, Carter

3  filed a document called a joinder and declaration,[5] in which he

4  joined in the Debtor's opposition to the Trustee's motion for

5  sanctions against her and presented opposition to the Trustee's

6  motion against him.[6]

7    On January 9, 2008, the Trustee filed a reply to Carter's

8  Opposition, and on January 16, 2008, the court heard oral

9  argument.  The following parties appeared:  Michael Dacquisto (by

10 telephone), for the Trustee; Jason Gold (by telephone), on his

11 own behalf;[7] John Read (by telephone), making a special

12 appearance for the Debtor; and Jeralyn Kay Spradlin (by

13 telephone), for creditor George Alonso.

14    Carter did not appear at the hearing, either in person or by

15 telephone.

16    The Motion having been briefed and argued by those parties

17 wishing to be heard, the court took the Motion under submission.

18                         II. ANALYSIS

19    This court has jurisdiction over the motion pursuant to 28

20 U.S.C. sections 1334 and 157(b)(1).  The Motion is a core

21 proceeding under 28 U.S.C. section (b)(2)(A), (E) & (H).

22 / / /

23 _____

24    5.  DN 376, hereinafter "Carter's Opposition."

25    6.  Carter also joined in the joinder of Jason Gold to the
26 Debtor's opposition.

27    7.  Since August 3, 2007, the effective date of the order
   authorizing the withdrawal of their former counsel, Raymond Aver,
28 Gold and Carter have represented themselves in this adversary
   proceeding.

                            - 4 -

A. The Meet and Confer Requirement

Following the Debtor's and Gold's lead, Carter states that the Motion "admits that Mr. Dacquisto failed to meet and confer with [him]."[8]  The court has addressed this issue in its memorandum decisions on the Trustee's motions for sanctions against the Debtor and Gold, Docket Control Nos. MPD-1 and MPD-2, and adopts herein its reasoning and conclusions on the issue.

The court notes that Carter, like Gold, did not respond to the Trustee's Counsel's December 12, 2007 letter, although he admits he received it and found its contents to be inaccurate.[9]

B. Legal Standards for Terminating Sanctions

The Motion is brought pursuant to Fed. R. Civ. P. 37(d),[10] incorporated in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7037.

Rule 37(d) provides:

> If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or . . . (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. . . .  In lieu of any order or in

---

8.  Carter's Opposition, ¶ 6.

9.  Carter's Opposition, ¶ 8.

10.  Unless otherwise indicated, Rule references are to the Federal Rules of Civil Procedure, as enacted and promulgated prior to December 1, 2007.  Effective that date, the Rules were amended "to make them more easily understood and to make style and terminology consistent throughout the rules."  The changes were "intended to be stylistic only."  Notes of Advisory Committee on 2007 Amendments.  Because this case was commenced prior to the effective date of the amendments, December 1, 2007, the earlier language will be used.

addition thereto, the court shall require the party
failing to act . . . to pay the reasonable expenses,
including attorney's fees, caused by the failure unless
the court finds that the failure was substantially
justified or that other circumstances make an award of
expenses unjust.

The failure to act described in this subdivision may
not be excused on the ground that the discovery sought
is objectionable unless the party failing to act has a
pending motion for a protective order as provided by
Rule 26(c).

In the circumstances listed above, Rule 37(b)(2)(C), in

turn, permits the court to enter "[a]n order striking out

pleadings or parts thereof, . . . or rendering a judgment by

default against the disobedient party. . . ."  Such a sanction is

commonly referred to as a terminating sanction, because it

terminates the party's right to a trial on the merits.

"A terminating sanction, whether default judgment against a

defendant or dismissal of a plaintiff's action, is very severe."

Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d

1091, 1096 (9th Cir. 2007).  As a result, the violation giving

rise to the sanction "must be due to the 'willfulness, bad faith,

or fault' of the party."  Jorgensen v. Cassiday, 320 F.3d 906,

912 (9th Cir. 2003), citing Hyde & Drath v. Baker, 24 F.3d 1162,

1167 (9th Cir. 1994), Fjelstad v. Am. Honda Motor Co., 762 F.2d

1334, 1341 (9th Cir. 1985).

"Disobedient conduct not shown to be outside the control of

the litigant is sufficient to demonstrate willfulness, bad faith,

or fault."  Jorgensen, 320 F.3d at 912, quoting Hyde & Drath, 24

F.3d at 1166.

The Ninth Circuit has created a five-part test, with three

subparts to the fifth part, for determining whether a terminating

sanction is just:

> "(1) the public's interest in expeditious resolution of
> litigation; (2) the court's need to manage its dockets;
> (3) the risk of prejudice to the party seeking
> sanctions; (4) the public policy favoring disposition
> of cases on their merits; and (5) the availability of
> less drastic sanctions." [Citation] The sub-parts of
> the fifth factor are whether the court has considered
> lesser sanctions, whether it tried them, and whether it
> warned the recalcitrant party about the possibility of
> case-dispositive sanctions. [Citation] This "test" is
> not mechanical.  It provides the district court with a
> way to think about what to do, not a set of conditions
> precedent for sanctions or a script that the district
> court must follow . . . .

Conn. Gen. Life Ins. Co., 482 F.3d at 1096, quoting Jorgensen,

320 F.3d at 912, and citing Valley Eng'rs v. Electric Eng'g Co.,

158 F.3d 1051, 1057 (9th Cir. 1998).

"[T]he most critical factor is not merely delay or docket

management concerns, but truth."  Conn. Gen. Life Ins. Co., 482

F.3d at 1097.

> What is most critical for case-dispositive sanctions,
> regarding risk of prejudice and of less drastic
> sanctions, is whether the discovery violations
> "threaten to interfere with the rightful decision of
> the case."

Valley Eng'rs., 158 F.3d at 1057, quoting Adriana Intl. Corp. v.

Lewis & Co., 913 F.3d 1406, 1412 (9th Cir. 1990).

> Sometimes courts respond to contumacious refusal to
> produce required discovery or comply with orders
> compelling discovery with suggestions that lawyers "quit
> squabbling like children" and work things out for
> themselves.   That can operate to the advantage of a
> dishonest, noncompliant party, and can prevent the truth
> from coming out.

Conn. Gen. Life Ins. Co., 482 F.3d at 1097.

Thus, where a "pattern of deception and discovery abuse" has

made it impossible for the court to conduct a trial "with any

reasonable assurance that the truth would be available,"

- 7 -

terminating sanctions are appropriate.  "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."  Conn. Gen. Life Ins. Co., 482 F.3d at 1097, quoting Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 352 (9th Cir. 1995).

C. The Debtor's Prior Behavior

Although the Motion is against Carter, for reasons that are set forth below, the court finds that the Debtor's conduct in her parent bankruptcy case and in this adversary proceeding bears on the resolution of the Motion.  Thus, the court incorporates herein the findings and conclusions set forth in its memorandum decision on the Trustee's motion for sanctions against the Debtor, Docket Control No. MPD-1.

D. Carter's Prior Behavior in this Adversary Proceeding

Whereas Gold has consistently followed the Debtor's direction in this proceeding, Carter has followed Gold's. Therefore, the court adopts herein the findings and conclusions set forth in its memorandum decision on the Trustee's motion for sanctions against Gold, Docket Control No. MPD-2.

As just indicated, Carter has followed Gold's lead in this matter.  First, in connection with the motion of Gold and Carter to vacate their defaults, Carter testified, "I left it to Jason Gold to retain counsel to defend the Aida Madeleine Lebbos No. 2 Trust."[11]

In his motion to withdraw as counsel for Gold and Carter, filed May 2, 2007, Raymond Aver testified that he had spoken

---

11.  Reply to opposition to motion for relief from default, filed March 21, 2007, DN 75, p. 9.

several times with Gold, but had never spoken with Carter.[12]  Gold filed opposition to Aver's motion, and appeared at the hearings. Carter did not respond to the motion, and did not appear at the June 6, 2007 hearing or the July 11, 2007 continued hearing. Gold appeared at the August 1, 2007 hearing on the motion Aver had filed to extend the deadline for Gold and Carter to respond to the complaint; Carter did not.

When the extended deadline finally arrived, on August 17, 2007, Gold and Carter, each ostensibly pro se, filed three motions each--to dismiss the adversary proceeding, to change its venue, and to disqualify the undersigned as the judge in the proceeding.  Also on August 17, the Debtor filed her second motion to change venue and her third motion to dismiss the adversary proceeding, and on September 6, her second motion to disqualify the undersigned.  As the court discussed in its memorandum decisions on the Trustee's motions against the Debtor and Gold, the motions of all three defendants were strikingly similar to each other.  The court notes that an individual with no legal background, such as Carter, almost certainly could not have drafted the motions filed by Carter or the accompanying points and authorities.[13]

---

12.   Motion to withdraw, DN 125, p. 12.

13.   Unlike the Debtor and Gold, Carter has no legal background.  He has testified, "I am not an attorney, and do not have any legal education or training."  Reply to opposition to motion for relief from default, filed March 21, 2007, DN 75, p. 9.

The court observes that the providing of legal arguments and points and authorities to Carter may well constitute the practice of law, for which neither the Debtor, a disbarred attorney, nor Gold, a paralegal and law student, is licensed.

- 9 -

The court has already concluded that the Debtor is writing for Gold and Carter and directing the course of their conduct and responses in this adversary proceeding. The court has considered Carter's testimony to the contrary,[14] and finds it not credible. First, Carter does not state that he prepared the pleadings he has filed in this case. Instead, as with Gold's pleadings, it is clear the Debtor prepared them. The Trustee's Counsel asked Carter on December 12, 2007 about the pleadings he has filed in this case.[15] Carter replied that someone was preparing them and looking at them on his behalf, but he refused to say who that was. In the face of this evidence, Carter maintains the Debtor is not controlling him, but still fails to identify the writer of his pleadings.[16]

Further, the Debtor, Gold, and Carter have testified in their oppositions to the Trustee's sanctions motions that they spent 78 hours, 26 hours, and six hours, respectively, responding

---

14.  Carter's Opposition, ¶ 2:

I had my November 6, 2007 letter FAXED to him [the Trustee's Counsel]. I prepared this letter and signed it, and Ms. Lebbos is not involved in my affairs, in the trust, or in the property. She is not controlling me or this litigation. She has nothing to do with the trust and has not even been on the property for several years. I am my own man, and Mr. Dacquisto's claims to the contrary are wrong.

15.  Trustee's exhibits, filed January 9, 2008, DN 387, Exhibit A.

16.  Carter states that the Trustee's Counsel's recitation of their December 12, 2007 telephone conversation is inaccurate. Carter's Opposition, ¶ 8. Carter does not mention the statements in Counsel's confirming letter about whether Carter had any documents pertaining to the Trust or about who had been writing Carter's pleadings. The court declines to find that these portions of the conversation simply did not occur. Thus, the court accepts the Trustee's Counsel's version of the conversation.

1  to the deposition notices and the Trustee's motions.  It is clear

2  that the Debtor is primarily responsible for those responses.[17]

3      Finally, despite his status as a pro se defendant in this

4  adversary proceeding, Carter has not appeared at a single

5  hearing.  He did not appear at the October 31, 2007 hearings on

6  his own motions to dismiss and to change venue.  He did not even

7  appear at either the preliminary or the final hearing on the

8  present motion, in which the Trustee seeks to strike his answer

9  and enter his default in the adversary proceeding.

10  E.  Carter's Reasons for Failing to Attend the Deposition

11      The court finds that, against the backdrop of this

12  bankruptcy case and this adversary proceeding, Carter's reasons

13  for failing to attend the deposition and to produce the required

14  documents are not sufficient.  Instead, the record more than

15  supports the conclusion that Carter's failure to act was willful

16  and in bad faith.

17      At no time between the date of the notice of deposition,

18  October 10, 2007, and the scheduled date of the deposition,

19  November 14, 2007, or at all, did Carter seek a protective

20  order.[18]  Instead, on November 7, 2007, he faxed a letter to the

21  Trustee's Counsel, stating, "I am in Las Vegas on that date [the

22  date of the deposition] and you should write me with other

23

24      17.  The Debtor's significant time commitment also belies the
    repeated contention that she has nothing to do with the Trust or
25  the property.

26      18.  The failure to attend one's deposition or to respond to a
    request for inspection of documents or property "may not be excused
27  on the ground that the discovery sought is objectionable unless the
    party failing to act has a pending motion for a protective order as
28  provided by Rule 26(c)."  Fed. R. Civ. P. 37(d).

                                - 11 -

1 possible dates for you to come down and get my statement."[19]  He
2 did not disclose how long he would be in Las Vegas or offer
3 alternative dates for the deposition.  Carter did not disclose
4 and has not since disclosed the reason he would be in Las Vegas;
5 thus, the court cannot conclude that he was required to be there
6 on November 14.  Instead, the court concludes that Carter could
7 have attended the deposition but chose not to.

8      The language "you should write me with other possible dates"
9 echoes the Debtor's argument that the Trustee's Counsel should
10 have cleared dates with the three defendants in advance, an
11 argument also made by Gold.  Carter also mirrored the Debtor's
12 and Gold's argument that they needed time to retain counsel to
13 represent them at the depositions, with the caveat that Carter
14 was relying on Gold to find counsel, as he had at the outset of
15 the case.  "I understand my co-trustee, Jason Gold, is hiring a
16 lawyer to represent us and so we need to have that taken care of
17 first as well."

18      The court makes no finding in this decision as to whether
19 Carter, as a trustee of a trust, was required to have counsel in
20 this matter, or as to whether he should have had counsel.  The
21 court finds only that, having chosen to rely on his lack of
22 counsel as an excuse for failing to attend the deposition, Carter
23 is chargeable with inexcusable delay in finding counsel for over
24 six months.  As with the Debtor and Gold, the lack of counsel
25 does not excuse Carter from attending the deposition or producing
26 the required documents.

27

28     19.  Trustee's exhibits, DN 305, Exhibit C, p. 3.

- 12 -

Carter's next excuse was that he "need[ed] to get permission to leave my work well enough in advance. . . ." Thus, he asked the Trustee's Counsel to give him "several dates that are at least a month away . . . ." In fact, the notice of deposition served October 10, 2007 gave Carter more than a month's notice of the November 14 deposition. Carter did not state that his employer would not allow him to be off work on November 14, or even that he had informed his employer about the deposition. Again, Carter offers no evidence that he could not have attended the deposition had he chosen to do so.

On December 5, 2007, Carter filed a joinder in the Debtor's motion for a continuance of the preliminary hearings on the Trustee's motions, DN 337. In that joinder, Carter suggested January 28, 29, and 30, 2008 as possible dates for the depositions, but even as late as December 5, he stated that he had not cleared those dates with his employer. In his opposition to the Motion, filed January 4, 2008, Carter did not mention the January dates, and thus, apparently still had not cleared them with his employer. Even if he had done so, however, his effort would have been too little, too late.[20]

Finally, Carter complained about the Trustee's Counsel's amended notice of deposition. "Please do not send changes at the

---

20.   The Ninth Circuit has "squarely rejected" the proposition that a belated offer cures a failure to comply with discovery. Henry v. Gill Industries, Inc., 983 F.2d 943, 947 (9th Cir. 1993), citing North Am. Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th Cir. 1986) [order of dismissal affirmed:   "Belated compliance with discovery orders does not preclude the imposition of sanctions."]; G-K Properties v. Redevelopment Agency of San Jose, 577 F.2d 645, 647-48 (9th Cir. 1978) [order of dismissal affirmed:   "last minute tender" of discovery does not cure effects of discovery misconduct].

last minute like you just did as that is not fair."   The change

complained of was in the time of the deposition--from 10:00 a.m.

to 1:00 p.m.   Carter did not explain why this relatively minor

change was unfair.   In fact, he and his co-defendants are the

ones who have engaged in last-minute tactics, each having waited

over three weeks from their likely receipt of the notices of

deposition before writing to unilaterally cancel the depositions.

Carter states in his opposition to the Motion that he did

not receive the Trustee's Counsel's November 7, 2007 letter.   He

testifies that he "received no phone call and no letter in

response to my request to reschedule."[21]   Rather than follow up to

be certain the Trustee's Counsel had received his letter, or to

verify that the Trustee's Counsel had accepted his unilateral

cancellation, Carter simply failed to appear.   This is not an

acceptable response to a notice of deposition.

Carter repeatedly refers to the deposition as a "statement,"

apparently seeking to persuade the court of his lack of legal

sophistication.   The attempt fails.   Proper participation in the

formal processes of discovery is an obligation of any party to a

lawsuit.   Carter's pro se status does not excuse him from

complying with discovery requests.   See American Ass'n of

Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th

Cir. 2000), citing Briones v. Riviera Hotel & Casino, 116 F.3d

379, 381 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th

Cir. 1987) ["Pro se litigants must follow the same rules of

procedure that govern other litigants."]; Lindstedt v. City of

---

21.   Carter's Opposition, ¶s 3, 4, 5.

_Granby_, 238 F.3d 933, 937 (8th Cir. 2000) ["A pro se litigant is bound by the litigation rules as is a lawyer, particularly . . . with the fulfilling of simple requirements of discovery."].

As discussed in the court's memorandum decision on the Trustee's motion against Gold, Gold assured the court he would have new counsel "onboard" by August 3.  His failure to retain replacement counsel by the time of the depositions is chargeable to Carter, who voluntarily chose to rely on Gold.  The court notes that Carter presumably chose to serve as a trustee of the Aida Madeleine Trust voluntarily, and thereby willingly accepted all the responsibilities of that role, including compliance with discovery requests in lawsuits involving the Trust.

The court finds that, as with the Debtor and Gold, Carter's excuses for failing to attend the deposition and failing to produce the required documents reflect an intention to prevent the Trustee from acquiring relevant information, and to prevent a trial on the merits after the timely completion of legitimate discovery.  The court finds Carter's failure to act to have been deliberate, willful, and in bad faith.

F. Consideration of the Five Factors

    1. The Public's Interest in the Expeditious Resolution of Litigation

"[T]he public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action." _Allen v. Bayer Corp. (In re:  Phenylpropanolamine (PPA) Prods. Liab. Litig.)_, 460 F.3d 1217, 1227 (9th Cir. 2006), quoting Fed. R. Civ. P. 1.  By contrast, delay "is costly in money, memory, manageability, and confidence in the process."  _Id._

1    As with Gold, the documents the Trustee seeks from Carter

2 concern, exclusively, the Aida Madeleine Lebbos Trust and the

3 property the Debtor alleges is owned by the Trust.[22]  In his

4 November 6, 2007 letter to the Trustee's Counsel (faxed November

5 7), Carter referred three times to the Trustee's Counsel taking

6 his "statement."  He did not mention the request for production

7 of documents.  Thus, by the time scheduled for the production,

8 November 14, 2007, Carter had ignored the request completely.

9    In their December 12, 2007 telephone conversation, the

10 Trustee's Counsel asked Carter whether he had any of the

11 requested documents; Carter replied that he had some papers about

12 the Trust somewhere and would need to look for them.[23]  This

13 response, coming two months after service of the request and one

14 month after the scheduled date for production, was arrogant,

15 cavalier, and contemptuous.

16    In his December 12 letter to all three defendants, the

17 Trustee's Counsel asked for the documents by January 4, 2008.

18 Carter did not respond and did not produce the documents,

19 although he has acknowledged receiving the letter.[24]  Instead, on

20 January 4, he filed his opposition to the Motion, stating, "I

21 think you have to punish Mr. Dacquisto for not being truthful or

22 cooperative."  Carter failed to mention the Trustee's request for

23

24    22.  Trustee's exhibits, DN 305, Exhibit A.

25    23.  As indicated above, Carter disputes that the Trustee's
Counsel's December 12, 2007 letter accurately reflects their
26 telephone conversation.  However, in any event, Carter gave the
Trustee's Counsel nothing helpful in that conversation.  "I said
27 that I needed to look at it and to let me think about it."
Carter's Opposition, ¶ 8.

28    24.  Carter's Opposition, ¶ 8.

the documents, or to suggest that he needed more time, or to indicate that he had taken any steps to comply.  In the six hours he has spent on this matter, he has failed to come up with a single document.  This failure is inexcusable.

The court also concludes that neither Carter's trip to Las Vegas nor his employment prevented him from attending the deposition or producing the documents, and that his failure to have counsel to represent him was the result of months of unreasonable and deliberate delay.

Thus, the court concludes that Carter, like Gold, has exhibited the same intention to delay, obstruct, frustrate, and wear down the Trustee and Trustee's Counsel as has the Debtor. Clearly, the public's interest in the inexpensive and expeditious handling of bankruptcy cases is not being served.  This factor weighs heavily in favor of a terminating sanction.

2. The Court's Need to Manage its Docket

Dismissal serves the court's need to manage its docket, when "a [party's] noncompliance has caused the action to come to a halt, thereby allowing the [party], rather than the court, to control the pace of the docket."  Allen, 460 F.3d at 1234, citing Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999).

Carter, like Gold, has clogged the court's docket with motions to dismiss, to change venue, and to disqualify the undersigned that were duplicative of motions previously filed and denied.  He has adopted the Debtor's arguments and stalling tactics in his efforts to avoid complying with his discovery obligations, thus ensuring that discovery matters would also clog

the court's docket.  This factor weighs heavily in favor of a
terminating sanction.

### 3. The Risk of Prejudice to the Party Seeking Sanctions

"Failing to produce documents as ordered is considered
sufficient prejudice."  <u>Allen</u>, 460 F.3d at 1227, citing <u>Adriana</u>,
913 F.2d at 1412.  Further, prejudice is presumed from
unreasonable delay, and the burden to show actual prejudice
shifts to the party seeking the sanction <u>only</u> after the
respondent has given a non-frivolous excuse for the delay.
<u>Hernandez v. City of El Monte</u>, 138 F.3d 393, 400-01 (9th Cir.
1998); <u>see also</u> <u>Malone</u>, 833 F.2d 128, 131 (9th Cir. 1987)
["Whether prejudice is sufficient to support an order of
dismissal is in part judged with reference to the strength of the
plaintiff's excuse for the default."].

Carter deliberately and without justification failed to
appear for his deposition and failed to produce required
documents.  Whether he is in charge of own defense or is taking
direction from the Debtor and/or Gold, his conduct has increased
administrative expenses and delayed the ultimate distribution to
creditors.  He behavior has drastically impaired the Trustee's
ability to test the validity of his defenses and, ultimately, to
put on her case.[25]  This factor weighs heavily in favor of a
terminating sanction.

/ / /

---

25.  "[T]he risk of prejudice to the Defendants in this matter
is great.  Without the critical information . . ., Defendants point
out that they will not only be unable to file dispositive motions,
but will be unable to fully prepare to try the case."  <u>Bonneville
v. Kitsap County</u>, 2007 U.S. Dist. LEXIS 25983 * 12 (W.D. Wash.
2007).

- 18 -

1    <u>4. The Public Policy Favoring Disposition of Cases on their</u>

2    <u>Merits</u>

3        This factor normally weighs against a terminating sanction.

4    However, "a case that is stalled or unreasonably delayed by a

5    party's failure to comply with deadlines and discovery

6    obligations cannot move forward toward resolution on the merits."

7    <u>Allen</u>, 460 F.3d at 1228.

8    <u>5. The Availability of Less Drastic Sanctions</u>

9        Factors that indicate whether a [trial] court has
         considered alternatives include:  "(1) Did the court
10       explicitly discuss the feasibility of less drastic
         sanctions and explain why alternative sanctions would
11       be inadequate? (2) Did the court implement alternative
         methods of sanctioning or curing the malfeasance before
12       ordering dismissal? (3) Did the court warn the
         plaintiff of the possibility of dismissal before
13       actually ordering dismissal?"

14   <u>Allen</u>, 460 F.3d at 1228-29, quoting <u>Malone</u>, 833 F.2d at 132.[26]

15       The test provides "a way [for the court] to think about what

16   to do, not a set of conditions precedent for sanctions or a

17   script that the . . . court must follow."  <u>Conn. Gen. Life Ins.</u>

18   <u>Co.</u>, 482 F.3d at 1096.  Thus, "it is not always necessary for the

19   court to impose less serious sanctions first, or to give any

20   explicit warning."  <u>Adriana</u>, 913 F.2d at 1413.

21       The critical test is whether the conduct of the party

22   resisting discovery renders it unlikely that the truth will come

23   _____

24       26.  Alternative sanctions may include "a warning, a formal
     reprimand, placing the case at the bottom of the calendar, a fine,
25   the imposition of costs or attorney fees, the temporary suspension
     of the culpable counsel from practice before the court, . . .
26   dismissal of the suit unless new counsel is secured[,] . . .
     preclusion of claims or defenses, or the imposition of fees and
27   costs upon plaintiff's counsel. . . ."  <u>Malone</u>, 833 F.2d at 132 n.
     1, quoting <u>Titus v. Mercedes Benz of North America</u>, 695 F.2d 746,
28   749 n. 6 (3rd Cir. 1982).

out.  A terminating sanction is appropriate where "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts."  Valley Eng'rs., 158 F.3d at 1058.  In such a situation, the court is justified in concluding that no lesser sanction would be effective.

As indicated above, the court concludes that the Debtor has written substantially all of the documents filed by Carter.  She has developed and implemented a pattern of delaying and impeding the progress of the action, a pattern Carter, like Gold, has followed without exception.  Carter, like Gold, has given the court no reason to expect any different behavior in the future. The court has already concluded that no lesser sanction than a terminating sanction would be effective as to the Debtor or Gold. The court finds no reason for a different conclusion with respect to Carter.

Further, the court finds that a terminating sanction will not unfairly punish Carter for the Debtor's or Gold's conduct.[27] Carter has voluntarily chosen from the beginning to allow the Debtor and Gold to act on his behalf in this litigation.  He has participated in their misconduct through his involvement with them.[28]  He has been "content to rest his response" on "a common basis" with them, and he has failed to "act independently" of

---

27.  See Malone, 833 F.2d at 134, citing Chism v. National Heritage Life Ins. Co., 637 F.2d 1328, 1332 (9th Cir. 1981), overruled on other grounds, Bryant v. Ford Motor Co., 844 F.2d 602, 605 (9th Cir. 1987).

28.  See Adriana, 913 F.2d at 1414.

- 20 -

them in any way.[29]  He has allowed and endorsed the conduct of the
Debtor and Gold on his behalf, and as a result, he cannot avoid
the consequences of their misconduct.  Thus, terminating
sanctions are as appropriate as to him as to them.

Moreover, Carter himself is no innocent party in this
matter.  He independently chose not to appear for his deposition,
and took it upon himself to write to the Trustee's Counsel, with
the weakest of excuses.  He has ignored the Trustee's request for
production of documents for over four months.  He ignored the
Trustee's Counsel's final attempt to arrive at an acceptable
arrangement, set forth in the December 12, 2007 letter.  He made
no offer of cooperation in his opposition to the Motion.  Even
when viewed independently, Carter's conduct is clearly calculated
to prevent the disclosure of relevant information and to obstruct
the timely resolution of this adversary proceeding on its merits.
The court finds that any lesser sanction than a terminating
sanction would be unproductive.

Finally, the court will address the issue of prior warnings
that a failure to cooperate might result in case-dispositive
sanctions.  For reasons discussed in the court's memorandum
decision on the Trustee's motion against Gold, and incorporated
herein, the court concludes that no warning expressly directed to
Carter was necessary.[30]  Instead, the court's comments directed to
the Debtor at the October 31, 2007 hearings were sufficient to

29.  See G-K Properties, 577 F.2d at 648-49.

30.  "[I]t is not always necessary for the court to impose
less serious sanctions first, or to give any explicit warning."
Adriana, 913 F.2d at 1413.

- 21 -

1   warn Carter that his failure to respond appropriately to the
2   Trustee's discovery requests might result in terminating
3   sanctions.  But, as further discussed below, even if a direct
4   warning to Carter was required, the court finds such in the
5   Trustee's Counsel's warning contained in the Motion itself.

6       On the court's calendar on October 31, 2007 were Gold's and
7   Carter's motions, filed August 17, 2007, to dismiss this
8   proceeding and to change its venue.  Gold appeared, and thus
9   heard the court's findings and conclusions stated on the record
10  concerning the Trustee's motion for contempt sanctions against
11  the Debtor, in the form of an order striking her answer and
12  entering her default in this adversary proceeding.  Carter did
13  not appear, and thus, did not hear the findings and conclusions.

14      The court finds that Carter is chargeable with the knowledge
15  he would have had if he had appeared in proper prosecution of his
16  own motions.  To the extent Carter was relying on Gold to act on
17  his behalf in this proceeding, as Carter's own testimony
18  indicates, Carter is chargeable with Gold's knowledge, and thus,
19  with awareness of the warning the court gave on October 31, 2007.

20      The court notes also that the Trustee's motion for contempt
21  against the Debtor, that generated the October 31, 2007 findings
22  and conclusions, was served on Aver, then counsel for Gold and
23  Carter.[31]

24      Finally, the Trustee's motion for terminating sanctions
25  against Carter himself, the motion that is the subject of this
26  ruling, provided a clear warning to Carter that there was a very

27

28      31.  Proof of service, filed July 31, 2007, DN 342 in Case No.
    06-22225.

- 22 -

1  real risk of such sanctions if he did not cooperate.  The
2  transcript of the October 31, 2007 hearing, with the court's
3  findings and conclusions, was filed and served as an exhibit to
4  the Motion.  And the Motion itself plainly warned Carter of the
5  terminating sanctions the Trustee was seeking against him.

6      Where a terminating sanction is issued following a noticed
7  motion, the lack of a prior warning by the court is less
8  significant than when the sanction is issued sua sponte.  <u>See</u>
9  <u>Allen</u>, 460 F.3d at 1229; <u>Moneymaker</u>, 31 F.3d at 1455.  In
10 essence, the motion itself provides the warning, allowing the
11 responding party to "remed[y] the situation by presenting to the
12 bankruptcy court a reason for his conduct that outweigh[s] the
13 prejudice to [the moving party]."  <u>Moneymaker</u>, 31 F.3d at 1455.

14     After the Motion was served and the preliminary hearing had
15 been conducted, the Trustee's Counsel wrote to the defendants on
16 December 12, 2007, offering a reasonable seven-part solution to
17 the discovery impasse.  The Trustee's Counsel requested that each
18 defendant indicate which parts he or she agreed with, and as to
19 those parts that were not agreeable, that he or she provide "a
20 concrete counter proposal for that item."  Carter, at that time
21 on full notice from the Motion that he risked terminating
22 sanctions if he did not cooperate, made no response at all.

23     The court concludes that its findings and conclusions stated
24 on the record on October 31, 2007, together with the language of
25 the Motion itself, provided ample warning to Carter that he would
26 face terminating sanctions if he did not cooperate with the
27 Trustee's discovery requests.
28 / / /

- 23 -

1                              III. CONCLUSION

2          Most important, the court must determine whether a "pattern

3   of deception and discovery abuse" has made it impossible for the

4   court to conduct a trial "with any reasonable assurance that the

5   truth would be available," Conn. Gen. Life Ins. Co., 482 F.3d at

6   1097, quoting Anheuser-Busch, Inc., 69 F.3d 337, 352 (9th Cir.

7   1995); in other words, whether the discovery violations "threaten

8   to interfere with the rightful decision of the case." Valley

9   Eng'rs., 158 F.3d at 1057, quoting Adriana, 913 F.3d 1406, 1412

10  (9th Cir. 1990).

11         As discussed in the court's memorandum decision on the

12  Trustee's motion for sanctions against the Debtor, the Debtor has

13  established a pattern of deception, concealment, delay, and

14  obstruction with respect to information legitimately sought by

15  the Trustee in both the parent bankruptcy case and this adversary

16  proceeding.  Gold has consistently adopted and furthered that

17  pattern.  Carter has chosen to rely on the Debtor and Gold to

18  present his arguments and represent his interests in this

19  proceeding, and to follow their direction in his response to the

20  Trustee's discovery requests.

21         In addition, Carter's own attitude toward discovery in this

22  proceeding demonstrates, independently, that he intends to

23  prevent the disclosure of relevant information and to obstruct

24  the timely resolution of this adversary proceeding on its merits.

25  In his November 6, 2007 letter to the Trustee's Counsel,

26  immediately after informing Counsel that he would be in Las Vegas

27  on the relevant date, he added, "You are wrong in trying to take

28  / / /

property which belongs to Ms. Lebbos' daughter and children."[32]
The remark was gratuitous but revealing.  Apparently Carter, like
the Debtor and Gold, expects the Trustee to accept his version of
the facts without further exploration.

Further, having failed to appear for his deposition or to
produce any documents in response to a legitimate request, and
having failed to seek a protective order, and in the face of a
motion for terminating sanctions, Carter took issue with the
Trustee's Counsel's choice of procedures.  "Mr. Dacquisto could
have called me to tell me what he wanted and for me to be able to
respond, but he did not do so."[33]  Carter, like the Debtor,
appears to believe he has the right to control the manner in
which the Trustee seeks information in this case; he does not.

In the end, facing terminating sanctions, Carter did not
offer a definite date for his deposition, did not offer any
documents, or even a deadline for producing documents, and did
not state that he had taken any steps toward gathering the
documents.  Instead, he urged this court "to punish Mr. Dacquisto
for not being truthful or cooperative."[34]

Given these remarks and Carter's continuing refusal to
cooperate with discovery, together with his reliance on the
Debtor and Gold, who have exhibited nothing but intransigence in
this case, the court is unable to conclude that if lesser
sanctions were applied as to Carter, the truth would ultimately

---

32.  Trustee's exhibits, DN 305, Exhibit C, p. 3.

33.  Carter's Opposition, ¶ 2.

34.  Id., ¶ 10.

1  come out.  Thus, terminating sanctions are appropriate, and

2  accordingly, the court will grant the Motion.

3      As required by the amended scheduling order in this

4  adversary proceeding, the Trustee's Counsel has submitted his

5  declaration setting forth the attorney's fees and costs incurred

6  in connection with his travel to Long Beach for the deposition

7  and document production, and in connection with the Motion.  The

8  court has reviewed that declaration, and finds that the amounts

9  charged are reasonable.

10     For the reasons set forth above, the court further finds

11 that Carter's failure to appear and to produce documents was not

12 substantially justified, and that there is no other circumstance

13 that would make an award of attorney's fees and costs unjust.

14 Thus, in accordance with Fed. R. Civ. P. 37(d), incorporated

15 herein by Fed. R. Bankr. P. 7037, the court will award the

16 Trustee attorney's fees in the amount of $2,475.00 plus costs in

17 the amount of $987.00, a total of $3,462.00, to be paid by

18 Carter.

19     Of this total sum of $3,462.00, the sum of $2,609.40 is a

20 joint and several responsibility among defendant Betsey Warren

21 Lebbos, defendant Jason Gold, and defendant Thomas Carter, and

22 the balance, $852.60, is payable solely by Carter.

23     The court will issue an order consistent with this

24 memorandum.

25 Dated: February 21, 2008    _Robert Bardwil_____

26                              ROBERT S. BARDWIL
                               United States Bankruptcy Judge

27

28

# CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a true copy of the attached document was mailed today to the following entities listed at the address(es) shown below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 41306
Long Beach, CA 90853-1306

Jason Gold
17091 Elm Street, Suite 3
Huntington Beach, CA 92646

Thomas Carter
P.O. Box 41175
Long Beach, CA 90853

DATE: February 21, 2008

_____
Andrea Lovgren